James L. KAPSIS, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

AMERICAN HOME MORTGAGE SER-
VICING INC. and Argent Mortgage
Company, LLC, Defendants.

No. 11–cv–4936 (JFB)(AKT).

United States District Court,
E.D. New York.

Feb. 14, 2013.

Joseph Harry Weiss and Mark David Smilow, Weiss & Laurie, New York, NY, for Plaintiff.

Kurt Wolber, Robert Mowrey, and Thomas G. Yogall, Locke Lord LLP, Dallas, TX, and R. James Jude De Rose, III, Locke Lord Bissell & Liddell LLP, New York, NY, for Defendant AHMSI.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

James L. Kapsis ("plaintiff") commenced this action, on behalf of himself and a class of individuals similarly situated, against American Home Mortgage Servicing Inc. ("AHMSI") and Argent Mortgage Company, LLC ("Argent"). Plaintiff alleged that AHMSI violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and New York General Business Law § 349 ("Section 349"). Plaintiff also brought claims for breach of contract and promissory estoppel against AHMSI, for breach of the implied covenant of good faith and fair dealing and unjust enrichment against both AHMSI and Argent, and for aiding and abetting against Argent.

Plaintiff's amended complaint focuses on the specific mortgage loan he received from Argent in 2003. Plaintiff's claims against both defendants derive from the events surrounding AHMSI's servicing of that loan. Specifically, plaintiff claims that he was victimized by AHMSI's improper

collection efforts, including, *inter alia*, failure to respond to inquiries, failure to properly credit payments, failure to provide accurate account information, unauthorized adjusting of escrow withholdings, and failure to remit insurance payments.

Both AHMSI and Argent moved to dismiss plaintiff's amended complaint. Prior to this opinion, plaintiff filed a stipulation and proposed order of dismissal as to defendant Argent. Subsequently, the Court ordered that the claims against Argent be dismissed. Thus, presently before the Court is defendant AHMSI's motion to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

AHMSI argues that plaintiff's amended complaint fails to articulate any cognizable basis upon which plaintiff is entitled to relief from AHMSI and, as such, that each of plaintiff's claims should be dismissed. Specifically, AHMSI argues that, for the following reasons, plaintiff has failed to assert a federal claim against AHMSI: (1) AHMSI is not a "debt collector" under the FDCPA; (2) plaintiff's FDCPA claim is untimely; (3) plaintiff has failed to show that the letters he sent AHMSI can be properly considered qualified written requests covered by RESPA; and (4) plaintiff has failed to sufficiently allege that he suffered damages as a result of AHMSI's purported RESPA violations. AHMSI argues that plaintiff has also failed to state any claims for recovery under New York law—specifically, that plaintiff has not sufficiently alleged that AHMSI violated Section 349, was unjustly enriched at plaintiff's expense, or breached any contract or

the implied covenant of good faith and fair dealing.

For the reasons set forth below, the Court denies AHMSI's motion to dismiss with respect to plaintiff's FDCPA, RESPA, Section 349, promissory estoppel, and unjust enrichment claims, and the Court grants AHMSI's motion to dismiss with respect to plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims, with leave for plaintiff to replead his breach of contract claim.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the amended complaint, including documents incorporated by reference in the amended complaint.[1] These facts are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motion to dismiss, and will construe them in a light most favorable to plaintiff, the non-moving party.

#### 1. Plaintiff's Loan from Argent

On or about December 5, 2003, plaintiff received an adjustable rate 30–year term loan ("Loan") in the amount of $425,000 from Argent. (Am. Compl. ¶¶ 25, 27.) A Mortgage Agreement and an adjustable rate note ("Note") were executed to memorialize the transaction. (*Id.* ¶ 28.) Pursuant to the Note, beginning February 2004 and through January 2034, plaintiff was required to repay the Loan in 360 consecutive monthly installments ("Monthly Payments"), based on an amortized schedule

---

1. In addition to the amended complaint, the Court has considered the adjustable rate note ("Note") that was executed to memorialize the transaction between plaintiff and Argent, discussed *supra*. The Note is referred to and relied upon throughout the amended complaint, and therefore may be considered in

evaluating AHMSI's motion to dismiss. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" by a court in ruling on a Rule 12(b)(6) motion.).

which includes interest, due on the first day of each month ("Due Date"). (*Id.* ¶ 30.) Pursuant to the Mortgage Agreement, plaintiff was also required to remit, on a monthly basis, an amount sufficient to cover projected property taxes and property insurance premiums (collectively, "Escrow") and any other amounts due by the Due Date. (*Id.* ¶ 31.)

Under the Mortgage Agreement, the Lender could either accept or return any payment to plaintiff if it was for an amount less than the amount due. (*Id.* ¶ 38.) If the Lender chose to accept an incomplete payment, the Lender would not be required to apply such payment at the time accepted, but rather, could hold the funds until the Loan was brought current. (*Id.* ¶ 39.) If a Monthly Payment was not received in full within fifteen calendar days of the Due Date, plaintiff was required to pay two percent of the amount of principal and interest overdue ("Late Fee"). (*Id.* ¶ 31 n. 1.) Under Section 7(B) of the Note, plaintiff would be in default if he failed to pay a Monthly Payment on or before the Due Date. (*Id.* ¶ 33; *see also* Note ¶ 7(B), ECF No. 15–1.)

Under the Mortgage Agreement, the Lender was required to give plaintiff an annual Escrow projections accounting that showed anticipated additions to and deductions from the Escrow account for the coming year and the reason for each. (Am. Compl. ¶ 34.) "If actual Escrow collections and disbursements result in a surplus from those projected, the Lender is required to promptly refund the excess." (*Id.* ¶ 35.)

Finally, if plaintiff fell behind on Monthly Payments, the Lender could demand in writing that he repay the overdue amount by a date at least 30 days after plaintiff received the written demand. (*Id.* ¶ 40.) If plaintiff failed to make payment pursuant to such a demand, the Lender would be entitled to accelerate the Loan and demand immediate payment of all principal and interest owed under the Note (provided that the written demand included certain requisite information). (*Id.* ¶ 41.)

### 2. AHMSI's Role in Servicing Plaintiff's Loan

The Mortgage Agreement provided that the right to collect Monthly Payments, along with other loan servicing obligations, could be transferred to a "Loan Servicer." (*Id.* ¶ 29.) The servicing rights to plaintiff's Loan were transferred to multiple Loan Servicers, and eventually to AHMSI on February 11, 2009. (*Id.* ¶ 43.) Plaintiff claims that "[p]rior to the time that AHMSI became the Loan Servicer ..., Plaintiff was already in 'default' under the Note because his Monthly Payment due on February 1, 2009 was not paid until February 14, 2009." (*Id.* ¶ 44.) Plaintiff also claims that AHMSI immediately began identifying itself as a "debt collector" on plaintiff's monthly statements and other communications between AHMSI and plaintiff. (*Id.* ¶ 45.)

Upon becoming plaintiff's Loan Servicer, AHMSI sent plaintiff multiple escrow statements, which increased the escrow amount plaintiff was required to pay each month. (*Id.* ¶¶ 46–49.) In response, plaintiff first requested that AHMSI provide documentation indicating that it was the proper Loan Servicer—a request to which AHMSI allegedly did not respond. (*Id.* ¶ 50.) Plaintiff then disputed the accuracy of AHMSI's Escrow projections, claiming that "they were artificially inflated." (*Id.* ¶ 51.) AHMSI subsequently issued a credit to plaintiff's account. (*Id.*)

### 3. Plaintiff's Tardy Payments and AHMSI's Response

Plaintiff failed to make his September 2010 Monthly Payment by the Due Date, but sent AHMSI a personal check to cover the payment, in the amount set forth in his August 2010 statement, on or about Octo-

ber 15, 2010. (*Id.* ¶ 52.) Plaintiff also failed to make his October 2010 Monthly Payment by the Due Date, but sent AHMSI a personal check to cover the payment, in the amount set forth in his September 2010 statement, on or about November 8, 2010. (*Id.* ¶ 53.) AHMSI returned that check to plaintiff the following month. (*Id.* ¶ 55.) When plaintiff inquired about this return, AHMSI responded by form letter, stating that the check was returned because it did not represent the total amount due or was not in the form of certified funds, and informing plaintiff that his Loan had been submitted to foreclosure on December 10, 2010. (*Id.* ¶ 56.) In response, plaintiff sent a letter to AHMSI and called multiple times, but never received word as to why his check had been returned and also never received documents proving that AHMSI was the proper servicer of his Loan. (*Id.* ¶¶ 57–61.)

On January 16, 2011, plaintiff was told that to have his Loan reinstated and removed from foreclosure, he needed to sign a forbearance agreement and pay $8,000 by January 19, 2011. (*Id.* ¶ 62.) Plaintiff claims that he did not receive the forbearance agreement from AHMSI as promised, even though he sent AHMSI a cashier's check for $8,000. (*Id.* ¶ 63.) Plaintiff subsequently spoke to an AHMSI representative who told him that AHMSI would send the forbearance agreement providing plaintiff with a detailed accounting, as requested. (*Id.* ¶ 70.) Plaintiff claims that he never received the agreement or the accounting. (*Id.* ¶ 71.)

On February 5, 2011, plaintiff's $8,000 cashier's check was returned to him, (*id.* ¶ 72), and throughout the last quarter of 2010 and the first quarter of 2011, AHMSI refused plaintiff's Monthly Payments on his Loan, (*id.* ¶ 73.) On or about February 10, 2011, AHMSI sent plaintiff a statement ("Payoff Statement") that indicated the following: (1) plaintiff owed $402,599.46, in-

cluding more than $4,200 in foreclosure-related fees; (2) plaintiff's September 2010 Monthly Payment was still late; and (3) plaintiff was required to send his September 2010 payment, plus interest and late fees, by February 28, 2011. (*Id.* ¶¶ 76–77.) Moreover, the Payoff Statement contained a disclosure indicating that it was a communication from a "debt collector." (*Id.* ¶ 79.) Once AHMSI sent the Payoff Statement, it stopped sending monthly statements to plaintiff. (*Id.* ¶ 80.) Thereafter, plaintiff repeatedly attempted to contact AHMSI to ascertain the balance on his account and the amount of each monthly payment owed, but to no avail. (*Id.* ¶¶ 81–84.)

On or about August 18, 2011, plaintiff received a demand letter from AHMSI stating the following: "[a]s of 08/18/2011 the amount of the debt that we are seeking to collect is $43,591.44, which includes the sum of payments that have come due on and after the date of default 09/01/2010, any late charges, periodic adjustments to the payment amount (if applicable) and expenses of collection." (*Id.* ¶ 88.) AHMSI also identified itself as a "debt collector" in the letter. (*Id.* ¶ 90.) According to plaintiff, the amount stated in the demand letter was improper because, among other things, it did not credit the check that AHMSI accepted from plaintiff on or about October 15, 2010 to cover his September 2010 Monthly Payment. (*Id.* ¶ 89; *see also id.* ¶ 52.) Plaintiff attempted to contact AHMSI to dispute this occurrence, but AHMSI did not respond. (*Id.* ¶ 92.)

Plaintiff claims that AHMSI has "harass[ed] [him] for repayment." (*Id.* ¶ 83.) Moreover, according to plaintiff, AHMSI representatives have left notes at plaintiff's residence, sat in parked cars outside his home for hours, and have taken photographs of his home. (*Id.* ¶¶ 84–85.) On May 11, 2011, plaintiff sent a letter to

AHMSI "citing such occurrences and requesting that AHMSI cease these activities, to which AHMSI [did] not respond[ ]." (*Id.* ¶ 86.)

Additionally, plaintiff alleges that AHMSI improperly withheld insurance funds from him. On August 28, 2011, a water pipe broke in plaintiff's residence, causing water damage to the premises. (*Id.* ¶ 93.) Plaintiff repaired the damage at his own expense, but later received a full refund check from his insurance company. (*Id.* ¶¶ 94–96.) Because AHMSI was named on the check, plaintiff contacted AHMSI to secure its endorsement. (*Id.* ¶ 96.) Plaintiff mailed the check to AHMSI, as requested, but AHMSI never endorsed it. (*Id.* ¶¶ 96–100.) On December 22, 2011, AHMSI "mailed Plaintiff a check in the amount of $3,750.00, holding back to itself more than $3,000 of the funds that were paid by Plaintiff's insurer." (*Id.* ¶ 101.) Plaintiff provided AHMSI with requested documentation to support his claim for the remainder of the insurance funds, but "AHMSI has failed to remit payment of the full amount due and owing Plaintiff from the funds provided by the insurer." (*Id.* ¶ 106.)

### B. Procedural History

Plaintiff filed a class action complaint on October 12, 2011. On December 7, 2011, Argent filed a letter motion for a pre-motion conference in anticipation of moving to dismiss plaintiff's complaint. AHMSI filed a similar request on December 16, 2011. The Court held a telephone pre-motion conference on January 3, 2012, at which time the Court set a briefing schedule for defendants' motions and gave plaintiff permission to file an amended complaint. Plaintiff filed his amended class action complaint on February 3, 2012.

On March 5, 2012, AHMSI filed a motion to dismiss plaintiff's amended class action complaint. That same day, Argent filed a motion to dismiss and/or for sum-mary judgment. On April 5, 2012, plaintiff filed an opposition to AHMSI's motion and a motion for an extension of time to respond to Argent's motion. The Court granted plaintiff's motion for an extension of time that same day. On April 19, 2012, AHMSI filed a reply in further support of its motion to dismiss. Plaintiff filed an opposition to Argent's motion on April 27, 2012, and Argent replied on May 25, 2012. The Court held oral argument on both motions on June 5, 2012.

On June 15, 2012, Argent submitted a proposal for limited discovery for the purpose of locating evidence to demonstrate that Argent was not the owner of the Loan at the times relevant to the amended complaint. Argent represented to the Court that counsel for AHMSI would produce a copy of the endorsed Note within three weeks. The Court ordered plaintiff and Argent to submit a letter regarding the status of the limited discovery by July 16, 2012. On July 16, 2012, plaintiff filed a stipulation and proposed order of dismissal of claims against Argent. The Court signed the Order that same day. The Order explicitly noted that the dismissal of claims against Argent would not affect AHMSI's pending motion to dismiss.

On October 11, 2012, plaintiff filed a notice of supplemental authority. AHMSI responded on October 17, 2012. The Court has fully considered the arguments and submissions of the parties.

### II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must al-

lege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir.2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937 (explaining that although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678, 129 S.Ct. 1937 (quoting and citing *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955) (internal citation omitted).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.,* 273 F.Supp.2d 351, 356–57 (S.D.N.Y.2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch Co.,* 396 F.3d 161 (2d Cir.2005).

### III. DISCUSSION

#### A. Plaintiff's FDCPA Claim

Plaintiff claims that AHMSI violated the FDCPA in the following ways: (1) "by failing to cease communications with Plaintiff and other Class members for purposes of debt collections after Plaintiff and other Class members notified AHMSI that they refused to pay the debt or that they wished AHMSI to cease further communications" in violation of 15 U.S.C. § 1692c, (Am. Compl. ¶ 120); (2) by "harass[ing] Plaintiff and other Class members" when "attempting to collect purported debts" in violation of 15 U.S.C. § 1692d, (*id.* ¶ 121); (3) by "making false or misleading representations to Plaintiff and other Class members as to the character, amount or legal status of their debt" or "threatening to take action that [ ] AHMSI [could] not legally take" in violation of 15 U.S.C. § 1692e, (*id.* ¶ 122); and (4) by engaging in "unfair practices by collecting amounts not expressly authorized by the loan agreements entered into by Plaintiff and the Class" in violation of 15 U.S.C. § 1692f, (*id.* ¶ 123.) AHMSI moves to dismiss plaintiff's FDCPA claim on the grounds that (1) AHMSI is not a "debt collector" under the FDCPA, and (2) even

if AHMSI is considered a "debt collector," plaintiff's FDCPA claim is barred by the applicable statute of limitations. For the reasons set forth below, the Court denies AHMSI's motion to dismiss plaintiff's FDCPA claim.

### 1. Applicable Law

The FDCPA was created to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Because "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," the Act aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote inconsistent State action to protect consumers against debt collection abuses." *Id.* § 1692(a), (e).

### a. "Debt Collectors" Subject to the FDCPA

■ Under the FDCPA, "debt collectors" are persons engaged in "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). Only "entities collecting debts due to another qualify as 'debt collectors'; the Act does not extend to creditors seeking to collect on debts owed to themselves." *Muniz v. Bank of Am., N.A.,* 11 Civ. 8296(PAE), 2012 WL 2878120, at *3, 2012 U.S. Dist. LEXIS 97865, at *8 (S.D.N.Y. July 13, 2012); *see also Maguire v. Citicorp Retail Servs.,*

*Inc.,* 147 F.3d 232, 235 (2d Cir.1998) (noting that creditors are generally not "debt collectors" under the FDCPA). Moreover, the FDCPA explicitly excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). "Thus, under § 1692a(6)(F)(iii), the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used." *Alibrandi v. Fin. Outsourcing Servs., Inc.,* 333 F.3d 82, 86 (2d Cir.2003).

### i. Determining Whether A Defendant is a "Debt Collector" by Virtue of Having Obtained a Debt in Default

Because the status of a debt determines whether the party collecting the debt is subject to the FDCPA, the distinction between a debt in default and a debt that is merely outstanding is critical. *Id.* The Second Circuit analyzed this distinction in *Alibrandi v. Financial Outsourcing Services, Inc.,* 333 F.3d 82. Because the FDCPA does not define "default," the Second Circuit considered the definitions of default provided by district courts in other circuits, as well as the underlying purpose of the FDCPA. *Id.* at 86–87. In so doing, the Court determined that default does not occur *immediately* after payment becomes due, but rather occurs some period of time after a debt becomes outstanding. *Id.* at 87.[2] Thus, the Court rejected plaintiff's argument that his debt went into default

**2.** Although the Second Circuit did not opine on the exact amount of time that must expire before a debt goes from outstanding to in default, it noted that a debt repayable in monthly installments under the Federal Family Education Loan Program goes into default after 180 days of delinquency, farm loans go into default 30 days after they become due, loans by federal insured depository institutions to Federal Deposit Insurance Corporation employees go into default 90 days after they become due, and certain student loans take 270 days to default. *Alibrandi,* 333 F.3d at 87.

immediately after he failed to pay, explaining that plaintiff's position would have "the paradoxical effect of immediately exposing debtors to the sort of adverse measures, such as acceleration, repossession, increased interest rates, and negative reports to credit bureaus, from which the [FDCPA] intended to afford debtors a measure of protection." *Id.*

In *Alibrandi*, the Second Circuit was dealing with a situation where, in addition to the lack of a definition of default in the FDCPA itself, there was no contract between the parties or a federal regulation to define the point of that debt's default. Courts in other circuits have explained that the determination of whether a debt is in default is to be made by a court on a case-by-case basis, and that applicable contractual or regulatory language defining the point of default may be instructive. *See, e.g., Alamo v. ABC Fin. Servs., Inc.*, No. 09–5686, 2011 WL 221766, at *5, 2011 U.S. Dist. LEXIS 5392, at *14 (E.D.Pa. Jan. 20, 2011) (stating that "[b]ecause no statutory definition exists, several district courts have addressed the issue of what constitutes a default under the FDCPA by looking to the contractual provisions governing the underlying debt between the consumer and the creditor," and deeming the contractual language in that case—"[a] default occurs when any payment due under this agreement is more than ten days late"—determinative on the question of the timing of default); *Simmons v. Med–I–Claims*, No. 06–1155, 2007 WL 486879, at *7, 2007 U.S. Dist. LEXIS 9403, at *19 (C.D.Ill. Feb. 9, 2007) ("The Court recognizes that in many contractual debtor-creditor relationships, a provision of the written agreement will dictate when the debt is considered in default, rather than simply outstanding."). Moreover, in noting the "statutory silence surrounding the term 'default,'" the Second Circuit, in *Alibrandi*, concluded that until Congress breaks the silence,

the interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default, according to their respective circumstances and business interests. Once the parties have contractually set the period of delinquency preceding default, it will be a relatively simple matter to determine whether the [FDCPA] applies.

333 F.3d at 87 n. 5.

ii. Determining Whether a Defendant is a "Debt Collector" by Virtue of Self–Identification as Such

As AHMSI notes, courts in other circuits have explained that merely including FDCPA language or disclaimers in correspondence with a debtor does not make one collecting on a debt a "debt collector" for purposes of the FDCPA. *See, e.g., Fouche' v. Shapiro & Massey LLP*, 575 F.Supp.2d 776, 788 n. 6 (S.D.Miss.2008) (rejecting plaintiff's argument that simply because defendant "so prominently" identified itself as a "debt collector" in its correspondence with plaintiff it should be subject to the FDCPA); *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, Civ. No. 06–3103(RHK)(AJB), 2007 WL 2695795, at *6, 2007 U.S. Dist. LEXIS 67826, at *17–18 (D.Minn. Sept. 12, 2007) (explaining that given the "unsettled area of the law" regarding FDCPA disclaimers—namely, that defendant could be seen as holding itself out as a debt collector under the FDCPA by including such disclaimers but could also subject itself to possible liability for failing to comply with the FDCPA by not including them—"[i]t was reasonable for [defendant] to err on the side of caution and include the FDCPA disclaimers in its communications"); *Alexander v. Omega Mgmt., Inc.*, 67 F.Supp.2d 1052, 1056 (D.Minn.1999) (finding that inclusion of

FDCPA language in correspondence does not estop a defendant from denying that it is a debt collector).

The Second Circuit also discussed this issue in *Alibrandi*. In particular, although in *Alibrandi* the Second Circuit rejected plaintiff's argument that defendant was a "debt collector" by virtue of plaintiff's debt being in default, the Court considered plaintiff's alternative argument—that defendant was a "debt collector" for purposes of the FDCPA because the agency collecting on plaintiff's debt before defendant self-identified as such. *Id.* at 87. Specifically, plaintiff's lessor retained an agency to help collect the money plaintiff owed. In its communications with plaintiff, that agency stated that it was a debt collector and included the warnings that the FDCPA requires in debtor-collector correspondence. *Id.* at 83. The agency subsequently transferred its collection responsibilities to defendant, who contracted with the lessor to "act as a service provider and not a collection agency" to plaintiff's debt. *Id.* The Second Circuit agreed with plaintiff that the lessor "had already declared the debt to be in default when [the agency], on behalf of [the lessor], specifically informed [plaintiff] that it, [the agency], was a 'debt collector.'" *Id.* at 87. Thus, the debt was already in default when defendant obtained it, and would remain in default irrespective of any arrangement defendant later made with the lessor to the contrary. *Id.* at 88 ("[Defendant] may sincerely have believed it was servicing a debt that was not in default, but that is irrelevant. If [lessor] had, through [agency], declared [plaintiff's] outstanding debt to be in default, then the default would have continued during [defendant's] subsequent collection efforts . . . ."); *cf. Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 538 (7th Cir.2003) (finding defendant subject to FDCPA even though debt was not in default when he obtained it because his representations indicated that he

thought the debt was in default and "[i]t makes little sense, in terms of the conduct sought to be regulated [by the FDCPA], to exempt an assignee from the application of the FDCPA based on a status it is unaware of and that is contrary to its assertions to the debtor"); *Cyphers v. Litton Loan Servicing, LLP,* 503 F.Supp.2d 547, 551 (N.D.N.Y.2007) ("A person collecting or attempting to collect a debt which was not in default at the time it was obtained by that person, but which that person *believed* was in default at that time, can also be a 'debt collector' under the FDCPA."). Therefore, although the Second Circuit has not held that the mere use of a "debt collector" disclaimer automatically transforms a person into a debt collector for purposes of the FDCPA, the *Alibrandi* decision makes clear that certain actions may constitute a declaration that a plaintiff's debt was in default at a particular time even if the debt was not technically in default. Thus, rather than simply focusing on the disclaimer in isolation, the facts in each case must be considered in their totality to determine whether a person is a "debt collector" pursuant to the FDCPA.

### b. Statute of Limitations for FDCPA Claims

 The statute of limitations for claims brought under the FDCPA is one year. 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this title [i.e., the FDCPA] may be brought . . . within one year from the date on which the violation occurs."). Equitable tolling of the one-year statute of limitations is permitted "as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights, which means a situation where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Wade v. Rosenthal,* CV–11–5672 (FB)(VVP), 2012

WL 3764291, at *3, 2012 U.S. Dist. LEXIS 123182, at *7–8 (E.D.N.Y. Aug. 29, 2012) (internal citations and quotations omitted) (explaining the doctrine of equitable tolling in the context of a FDCPA dispute).

### 2. Analysis

In moving to dismiss plaintiff's FDCPA claim, AHMSI argues that it is not a "debt collector" subject to the FDCPA—both because it did not obtain a debt in default and because any self-identification as a debt collector does not alone make it a debt collector for purposes of the FDCPA.

██ If plaintiff's Loan was not in default at the time that AHMSI became the Loan Servicer, AHMSI, in seeking payment on the Loan, would not be a "debt collector" subject to regulation under the FDCPA. *See Muniz,* 2012 WL 2878120, at *3, 2012 U.S. Dist. LEXIS 97865, at *10–11 (citing *Franceschi v. Mautner-Glick Corp.,* 22 F.Supp.2d 250, 254 (S.D.N.Y.1998) (holding that a landlord and management agent were not "debt collectors" under the FDCPA because they had obtained the right to collect the tenant's rent before · it became overdue)). AHMSI obtained plaintiff's Loan on February 11, 2009. (Am. Compl. ¶ 44.) At that point in time, plaintiff still owed his February Monthly Payment, which was due on the Due Date (February 1, 2009). (*Id.*) AHMSI and defendant disagree as to whether AHMSI therefore obtained a debt in default or merely a debt outstanding. Plaintiff claims that his Loan went into default immediately when he failed to pay his February Monthly Payment on the

Due Date. (*Id.*) AHMSI, citing *Alibrandi,* 333 F.3d 82, contends that plaintiff's Loan could not have gone into default immediately after payment became due. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mot.") at 6–7.)

Although the Second Circuit has held that default does not occur immediately after payment becomes due, as discussed *supra,* in delivering that holding, the Second Circuit was dealing with a situation where there was no contract between the parties or federal regulation to define the point of the debt's default. Here, plaintiff points to a provision of the Note titled "Default" to support its claim that the Loan went into default immediately after his payment became due. That provision reads: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." (Note ¶ 7(B), ECF No. 15–1; *see also* Am. Compl. ¶¶ 33 ("Under Sections 3(A) and 7(B) of the Note, the Borrower's failure to pay the full amount of any Monthly Payment by the Due Date automatically causes the Loan to be in 'default.' ").) Because the determination of whether a debt was in default is to be made on a case-by-case basis, the language of the Note can be instructive in this case. *See Alamo,* 2011 WL 221766, at *5 (finding that contractual language was determinative on the question of the timing of default). Thus, viewing the facts alleged in the light most favorable to plaintiff, plaintiff has made a plausible claim that his Loan was in default when AHMSI obtained it, thereby rendering AHMSI subject to the FDCPA.[3]

---

**3.** AHMSI also contends that its "identification of itself as a debt collector in certain communications with Plaintiff does not ... make AHMSI a debt collector under the FDCPA." (Def.'s Mot. at 8.) However, as noted above, this Court concludes that the contractual language itself in this particular case, even without AHMSI's alleged self-identification as a debt collector, is sufficient to state a plausible claim that AHMSI is a debt collector under the FDCPA. Thus, this is not a situation where AHMSI is alleged to be a "debt collector" under the FDCPA based on its self-identification alone; rather, the alleged self-identification is being used to buttress a plausible claim based upon the language of the contract itself.

The Court also finds AHMSI's statute of limitations argument to be without merit. AHMSI references plaintiff's tardy February 2009 Monthly Payment in arguing that plaintiff's FDCPA claim is barred by the statute of limitations. (*See* Def.'s Mot. at 7–8.) However, AHMSI improperly conflates two very different dates—the date used to determine whether AHMSI obtained a debt in default and the date used to ascertain the statute of limitations period for plaintiff's FDCPA claim. As discussed *supra*, February 2009 is relevant to the determination of whether AHMSI obtained plaintiff's Loan in a state of default (to in turn determine whether AHMSI is subject to the FDCPA). February 2009 is not, however, the appropriate inquiry for statute of limitations purposes. Instead, the relevant date is the "most recent date on which [AHMSI] is alleged to have violated the FDCPA." *Padilla v. Payco Gen. Am. Credits, Inc.,* 161 F.Supp.2d 264, 273 (S.D.N.Y.2001) ("[T]he statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing, but rather to protect defendants by ensuring that the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA."). Because plaintiff has alleged FDCPA violations by AHMSI that occurred within one year prior to October 12, 2011,[4] plaintiff's FDCPA claim is timely. *See id.* ("Regardless of the legal effect of [AHMSI's alleged FDCPA violations], these events are alleged to have taken place less than one year before [plaintiff] filed this action. [Defendant's] statute of limitations motion is therefore denied.").

In sum, plaintiff has brought his FDCPA claim within the applicable statute of limitations period and has, in citing the Note's definition of default, sufficiently alleged, for purposes of the pending motion to dismiss, that AHMSI is a "debt collector" subject to the FDCPA. Therefore, viewing the facts alleged in the amended complaint in the light most favorable to plaintiff, the Court concludes that plaintiff has sufficiently pled a plausible FDCPA claim against AHMSI that survives a motion to dismiss.

**B. Plaintiff's RESPA Claim**

Plaintiff's next cause of action seeks damages for defendant's alleged violation of Section 2605 of RESPA. Plaintiff claims that AHMSI's "pattern or practice of noncompliance" with RESPA is exhibited by its alleged failure to: (1) acknowledge receipt of each qualified written request (QWR) sent by plaintiff and other Class members; (2) make appropriate account corrections to plaintiff and other Class members pursuant to their QWRs; (3) provide appropriate written explanations to plaintiff and other Class members to substantiate the accuracy of their accounts; and (4) provide appropriate written explanations to plaintiff and other Class members explaining why information requested through the QWRs was unavailable. (Am. Compl. ¶ 113.) Plaintiff contends that, as a result of these alleged violations of RESPA, plaintiff and the Class were injured, entitling them to damages. (*Id.* ¶ 115.) In moving to dismiss plaintiff's RESPA claim, AHMSI argues that plaintiff had failed to (1) demonstrate that what was sent to AHMSI was in fact QWRs, and (2) show that he suffered dam-

4. Although plaintiff filed his amended complaint on February 3, 2012, the "amended complaint relates back to the date of filing the first complaint because 'the claim ... asserted in the amended [complaint] arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *Padilla,* 161 F.Supp.2d at 273 n. 15 (quoting Fed.R.Civ.P. 15(c)).

ages as a result of AHMSI's failure to respond. For the reasons set forth below, the Court denies AHMSI's motion to dismiss with respect to plaintiff's RESPA claim.

### 1. Applicable Law

The purpose of RESPA is to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). Under Section 2605 of RESPA, a debtor may submit a QWR to the servicer of its loan for "information relating to [ ] servicing." *Id.* § 2605(e)(1)(A). The statute defines a QWR as:

a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B).

If a servicer of a "federally related mortgage loan" receives a QWR from a borrower or an agent of the borrower, "the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal pub-

lic holidays, Saturdays, and Sundays) unless the action requested is taken within such period." *Id.* § 2605(e)(1)(A). The servicer shall immediately "make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower written notification of such correction (which shall include the name and telephone number of a representative . . . who can provide assistance to the borrower)." *Id.* § 2605(e)(2)(A). Additionally, after receiving a QWR, a servicer must conduct an investigation and respond within 60 days with a written explanation that includes "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer" and "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." *Id.* § 2605(e)(2)(B). A servicer subject to RESPA who fails to comply with either of these requirements is subject to actual damages, costs, and, "in the case of a pattern or practice of noncompliance with the requirements of [Section 2605]", statutory damages. *Id.* § 2605(f).[5]

To survive a motion to dismiss, a plaintiff bringing a Section 2605 claim must, in addition to showing defendant's failure to comply with the provisions of Section 2605, identify damages that he or she sustained as a result of defendant's alleged violation(s). Specifically, to state a Section 2605 claim, a plaintiff "must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a re-

---

**5.** Section 2605(f) of RESPA provides that:

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f)(1).

sult of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605." *Gorbaty v. Wells Fargo Bank, N.A.,* 10–CV–3291 (NGG)(SMG), 2012 WL 1372260, at *5, 2012 U.S. Dist. LEXIS 55284, at *14–15 (E.D.N.Y. Apr. 18, 2012) (quoting 12 U.S.C. § 2605(f)).

"A plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." *Id.* at *5, 2012 U.S. Dist. LEXIS 55284, at *15–16. Thus, to survive a motion to dismiss, the complaint must contain "factual allegation[s] suggesting that any damages [plaintiff] suffered were proximately caused by [defendant's] violations of § 2605," and conclusory allegations to that effect will not suffice. *Id.* at *5, 2012 U.S. Dist. LEXIS 55284, at *16–17 (explaining that alleging damages is not enough, but that a plaintiff must "explain how th[ose] problems were caused specifically by [defendant's] alleged § 2605 violations"); *see also Corazzini v. Litton Loan Servicing LLP,* 1:09–cv–199 (MAD/ATB), 2010 WL 6787231, at *12, 2011 U.S. Dist. LEXIS 63565, at *37 (N.D.N.Y. June 15, 2011) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff." (citation and internal quotation marks omitted)); *cf. Midouin v. Downey Savs. & Loan Ass'n, F.A.,* 834 F.Supp.2d 95, 112–13 (E.D.N.Y. 2011) (holding that plaintiff's claims for actual damages survived motion to dismiss because complaint sufficiently alleged that as a result of defendant's purported RESPA violations, plaintiff "has suffered loss of retirement savings, loss of income, nausea, emesis, constant headaches, insomnia, embarrassment, and incurred an ascertainable loss").

To obtain statutory damages, a plaintiff must establish "a pattern or practice of noncompliance with the requirements" of § 2605 by the defendant. 12 U.S.C. § 2605(f)(1). "Pattern or practice means a standard or routine way of operating." *Gorbaty,* 2012 WL 1372260, at *5, 2012 U.S. Dist. LEXIS 55284, at *19 (citation and internal quotation marks omitted). Though there is no magic number of violations that create a "pattern or practice of noncompliance," courts have held that two violations of RESPA are insufficient to support a claim for statutory damages. *See id.; McLean v. GMAC Mortg. Corp.,* 595 F.Supp.2d 1360, 1365 (S.D.Fla.2009).

#### 2. Analysis

##### a. Whether Plaintiff Has Sufficiently Pled that QWRs Were Sent to AHMSI

█ AHMSI does not dispute that it is the servicer of federally related mortgage loans subject to RESPA. AHMSI also does not dispute that it at times failed to respond to plaintiff's written correspondence. AHMSI does dispute, however, that the letters plaintiff sent AHMSI qualify as QWRs under RESPA.

Plaintiff's amended complaint is replete with allegations of various letters sent by plaintiff to AHMSI, throughout late 2010 and early 2011, requesting information about his Loan and disputing actions taken by AHMSI in regards to the Loan. (*See* Am. Compl. ¶¶ 50–51, 57–58, 63, 74, 86, 91.) In moving to dismiss plaintiff's RESPA claim, AHMSI argues that although plaintiff references these letters in his amended complaint, plaintiff failed to adequately plead that these letters qualify as QWRs under Section 2605. (Def.'s Mot. at 10–11.) AHMSI contends that because plaintiff's amended complaint fails to both "identify to whom [plaintiff] sent his request[s]" and "allege the specific reasons that [plaintiff] believed his account was in

error, [plaintiff's] RESPA claim is insufficiently pled and subject to dismissal." (*Id.* at 11.) The Court disagrees.

For each alleged QWR included in the amended complaint, plaintiff indicates when the letter was sent, to whom it was sent, why it was sent, and a summary of the request contained therein. For example, in regards to the letter plaintiff sent on or about December 29, 2010, plaintiff states the following:

> 57. On or about December 29, 2010, Plaintiff wrote AHMSI protesting its return of Check # 490. Plaintiff stressed the fact that most of Plaintiff's previous payments to AHMSI had been by personal check, all of which AHMSI had accepted without incident.
>
> 58. Plaintiff's December 29th letter also requested, for a second time, that AHMSI furnish Plaintiff with the documents proving the transfer of the Loan's servicing from Citi Residential to AHMSI.

(Am. Compl. ¶¶ 57–58.) Plaintiff clearly indicated that his letter was sent to AHMSI and that he believed AHMSI's remittal of Check # 490 was erroneous. Thus, AHMSI's contention that plaintiff's amended complaint fails to identify to whom plaintiff sent his letters and to allege specific reasons why he believed his account was in error is without merit.[6]

Moreover, AHMSI has failed to demonstrate, at least at this stage of the litigation, that plaintiff's letters to AHMSI can not qualify as QWRs under RESPA. As stated *supra*, a "written correspondence" is considered to be a QWR if it "includes, or otherwise enables the servicer to identify, the name and account of the borrower" and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Plaintiff did not attach his written correspondence to his amended complaint; however, some of the letters referenced in his complaint are appended to his opposition papers. (*See* Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") Exs. A, C, F–H.) Because those letters are incorporated by reference in the amended complaint, the Court has considered them for purposes of the pending motion to dismiss. *See Roth,* 489 F.3d at 509. Those particular letters appear to satisfy the provisions of RESPA's definition of a QWR, as they contain (1) the name and account or loan number of plaintiff, and (2) a statement of reasons why plaintiff believes the account is in error or detail regarding information sought by plaintiff. For example, plaintiff's December 28, 2010 letter to AHMSI contains plaintiff's full name and his specific loan number in the signature block, and the body of the letter reads as follows:

> Please forward me copies of all loan documents executed by you and Citi-

---

**6.** To support its contention that a plaintiff fails to sufficiently plead a RESPA claim if his complaint fails to identify to whom specifically he made QWRs, AHMSI cites *Delino v. Platinum Community Bank,* 628 F.Supp.2d 1226, 1231–32 (S.D.Cal.2009). As a preliminary matter, the Court notes that the *Delino* court found the plaintiff's pleading of his alleged QWRs to be insufficient for a multitude of reasons, only one being that plaintiff failed to allege to whom specifically his QWRs were sent. *Id.* Moreover, in that case, the plain- tiff's RESPA claim was brought against *multiple* defendants. Thus, it was problematic that plaintiff did not allege to whom *specifically* his QWRs were sent because without such information, it would be impossible to know which defendant was potentially obliged to respond. That is not the case here, as AHMSI is the only defendant and the amended complaint clearly states that each alleged QWR was sent to AHMSI. (*See* Am. Compl. ¶¶ 50–51, 57–58, 63, 74, 86, 91.)

Bank for the transfer of my mortgage to your firm. This is my second request. Additionally, you have notified me ... that my loan has been submitted for foreclosure ... and have returned my check based on the fact that it is not certified. My other checks you cashed were not certified either, so I am at a loss of understanding of why this check was returned. Please advise.

(Pl.'s Opp'n Ex. A, at 1.) Thus, this letter to AHMSI contains the requisite debtor identification information, as well as the necessary substantive information (this letter actually contains both a reason why plaintiff believes his account is in error and detail about the information plaintiff, for the second time, seeks) of a QWR under RESPA. *See Hawkins–El v. First Am. Funding,* 891 F.Supp.2d 402, 408 (E.D.N.Y.2012) (finding that plaintiff's letters were QWRs because they "provided [defendant] with sufficient information to identify the borrower, provided reasons why [p]laintiff disputed that he owed money to [defendant] and requested information about JPMorgan's transfer of the loan to [defendant]"); *Midouin,* 834 F.Supp.2d at 111 n. 18 (deeming a letter that "includes plaintiff's name and account number, states that plaintiff seeks to rescind the transaction, lists a number of alleged errors in the disclosures plaintiff received upon Closing, and requests an itemized loan disbursement statement, the loan charges, the current principal balance, and all payments received from plaintiff" a QWR (internal quotations omitted)).

The Court has not been provided with each of the alleged QWRs that plaintiff sent to AHMSI. However, based on its review of the correspondence in its possession, and viewing the facts alleged in the amended complaint in the light most favorable to plaintiff, the Court concludes that plaintiff has sufficiently pled, for purposes of a motion to dismiss, that QWRs were in fact sent to AHMSI.

### b. Whether Plaintiff Has Sufficiently Pled Damages

■ As discussed *supra,* to survive a motion to dismiss, plaintiff must show that he sustained damages as a result of AHMSI's alleged violations of Section 2605 of RESPA. Plaintiff claims that he "and the Class were injured as a result of Defendant AHMSI's violations of RESPA ... entitling them to actual damages incurred, costs (including reasonable attorneys' fees) and any additional damages as the Court may allow under RESPA." (Am. Compl. ¶ 115.) Accordingly, the Court must determine whether plaintiff has sufficiently pled actual and/or statutory damages.

As to actual damages, AHMSI contends that the amended complaint "fails to demonstrate in any way how AHMSI's alleged failure to respond to [plaintiff's] purported qualified written requests caused [p]laintiff to incur any damages...." (Def.'s Mot. at 13.) In its moving papers, AHMSI cites *In re Griffin,* No. 10–22431(RDD), 2010 WL 3928610, at *6, 2010 Bankr. LEXIS 3555, at *14 (S.D.N.Y. Aug. 31, 2010), to support its argument that plaintiff has merely pled speculative damages and, as such, cannot survive a motion to dismiss. However, the Court reads *Griffin* to lend credence to plaintiff's opposition, rather than to support any dismissal of plaintiff's RESPA claim.

Recognizing that "courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff," the *Griffin* Court analyzed the defendant's first argument for dismissal— that the complaint failed to allege actual damages and proximate cause with a sufficient amount of plausibility. *Id.* at *4, 5–6, 2010 Bankr. LEXIS 3555, at *10, 13–14. In so doing, the court stated the following:

[I]f a complaint in a nonspeculative fashion asserted that a servicer or a lender had misapplied the borrowers' payments on the loan, it would clearly assert damages. And the failure to correct those damages, to my mind, would constitute proximate cause of actual damages in that the [plaintiff] would still be improperly billed for its loan, which seems to fit ... exactly within the language and purpose of RESPA.... [T]hat would be a different scenario than simply saying that, for example, the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused.

*Id.* at *6, 2010 Bankr. LEXIS 3555, at *14. Here, plaintiff asserts, in his amended complaint, that AHMSI misapplied his payments on the Loan. (*See* Am. Compl. ¶¶ 55–57, 72–74, 77–78, 88–89.) Thus, under the reasoning of *Griffin,* the amended complaint adequately asserts damages. Plaintiff also alleges that AHMSI failed to correct those damages, (*see id.* ¶¶ 59–62, 71, 73, 91–92), thereby indicating, under the reasoning of *Griffin,* proximate cause between AHMSI's alleged violations of Section 2605 and the damages incurred by plaintiff. Moreover, whereas the court in *Griffin* nevertheless found that the plaintiff in that case had failed to adequately plead actual damages because he asserted misapplication of payments "in an entirely speculative way," *In re Griffin,* 2010 WL 3928610, at *6–7, 2010 Bankr. LEXIS 3555, at *15–16, here plaintiff has identified, in his amended complaint, specific "error[s] or potential error[s]" on the part of AHMSI, (*see* Am. Compl. ¶¶ 52–57 (explaining that plaintiff's September Monthly Payment, although submitted late, was accepted by AHMSI without reservation, but that his October Monthly Payment, also submitted late, was returned); *id.* ¶¶ 77–78 (indicating that in February 2011, AHMSI requested plaintiff's September 2010 Monthly Payment plus interest and

late fees even though plaintiff had tendered, and AHMSI had accepted, the September Monthly Payment (minus late fees) back in October 2010).) Thus, plaintiff has gone well beyond a "nebulous assertion that [he] believe[s] that the payments were misapplied," *In re Griffin,* 2010 WL 3928610, at *6, 2010 Bankr. LEXIS 3555, at *15, and has instead made a plausible claim of misapplication by AHMSI to constitute proximate cause of damages.

AHMSI urges the Court to recognize that this is not a case like *Midouin v. Downey Savings and Loan Ass'n,* 834 F.Supp.2d 95, where the complaint specifically enumerated each injury suffered as a result of defendant's alleged RESPA violations. *See id.* at 112 ("Complaint alleges that '[a]s a result of the acts specifically alleged above, Plaintiff has suffered loss of retirement savings, loss of income, nausea, emesis, constant headaches, insomnia, embarrassment, and incurred an ascertainable loss.'" (citation omitted)). However, at this stage in the litigation, the Court must merely determine whether, viewing the facts alleged in the light most favorable to plaintiff, plaintiff has made a plausible claim for damages, and under the reasoning of *Griffin,* plaintiff has.

As for statutory damages, plaintiff claims that the violations of RESPA by AHMSI alleged in the amended complaint "constitute a 'pattern or practice of noncompliance' within the meaning of 12 U.S.C. § 2605." (Am. Compl. ¶ 114.) In his amended complaint, plaintiff alleges numerous violations of Section 2605 by AHMSI in servicing plaintiff's Loan specifically. (*See, e.g., id.* ¶¶ 59–60, 74 (explaining that AHMSI confirmed receipt of plaintiff's December 29, 2010 letter, but failed to respond with a written explanation in 60 days, or ever); *id.* ¶¶ 91–92 (explaining that on August 25, 2011, plaintiff sent a letter requesting a detailed ac-

counting of the money owed and documentation supporting AHMSI's authority to act as servicer, but AHMSI never acknowledged receipt of the letter and never responded to it).) Moreover, in bringing this action on behalf of a class of similarly situated individuals, plaintiff's amended complaint alleges that AHMSI also violated Section 2605 in servicing each of the class members' loans. (*See id.* ¶ 113 (listing purported violations of Section 2605 by AHMSI in regards to plaintiff and other class members' accounts).) Thus, plaintiff has alleged more than two violations of RESPA by AHMSI and, as such, he has stated a plausible claim for statutory damages under RESPA.

In sum, viewing the facts alleged in the amended complaint in the light most favorable to plaintiff, the Court concludes that plaintiff has sufficiently pled a plausible RESPA claim that survives a motion to dismiss.

### C. Plaintiff's State Law Claims

#### 1. New York General Business Law § 349

Plaintiff also asserts a claim under Section 349 of the New York General Business Law. As set forth below, although defendant argues that plaintiff has failed to articulate any practice aimed at the public, the Court disagrees and concludes that the complaint states a plausible Section 349 claim.

■ Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. G.B.L. § 349(a). To state a claim under Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.2000).

■ Under this provision, "the gravamen of the complaint must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d · Cir.1995) (internal citation and quotation marks omitted). Accordingly, to state a claim under Section 349, a plaintiff must allege, *inter alia*, "that defendants engaged in a consumer-oriented act," a requirement that "has been construed liberally." *New York v. Feldman*, 210 F.Supp.2d 294, 301 (S.D.N.Y.2002) (internal citations and quotation marks omitted). "Consumer-oriented" has been defined in this circuit as "conduct that potentially affects similarly situated consumers." *SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir.1996) (citation and internal quotations omitted). As the New York Court of Appeals has stated, "[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995). Instead, the critical question is whether "the acts or. practices have a broad [ ] impact on consumers at large." *Id.; see, e.g., Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51–53 (2d Cir. 1992) (holding Section 349 applicable to insurers where plaintiffs demonstrated that similar practices had been employed by defendant against multiple insureds). "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *Feldman*, 210 F.Supp.2d at 301 (collecting cases).

■ AHMSI argues that plaintiff has failed to articulate any general business practice, let alone a deceptive one aimed at the public, and, as such, plaintiff's Section 349 claim must be dismissed. (Def.'s

Mot. at 16.) The Court disagrees. Plaintiff alleges that AHMSI violated Section 349 by, *inter alia,* failing to properly credit accounts (accounts of both plaintiff and other class members) after payments were made, failing to timely respond to communications sent by debtors, issuing false or misleading monthly statements and escrow projection statements, and refusing to provide detailed accountings to debtors for sums allegedly owed. (*See* Am. Compl. ¶ 128.) Plaintiff claims that "[a]s a servicer of residential mortgage loans, Defendant AHMSI is engaged in consumer-oriented conduct and activities" and that because the class is "comprised of tens-of-thousands of individuals whose residential mortgage loans are serviced" by AHMSI, AHMSI's alleged deceptive acts and practices "affect[ ] consumers at large." (*Id.* ¶ 127.) Plaintiff has thus alleged that AHMSI engaged in deceptive practices directed not just at him, but also at a large class of similarly situated debtors. The Court therefore concludes that, at this stage of the case, plaintiff has adequately alleged a consumer-oriented practice sufficient to state a claim under Section 349. Accordingly, AHMSI's motion to dismiss plaintiff's Section 349 claim is denied.

### 2. Breach of Contract

Plaintiff alleges a cause of action for breach of contract. As discussed below, this claim must be dismissed because plaintiff is not a party to the contract at issue. However, the Court will grant plaintiff leave to re-plead to allow him to assert a breach of contract claim under the alternative theory that privity can be imputed to AHMSI because it was acting as the agent of the contracting party.

 "The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Kramer v. N.Y.C. Bd. of Educ.,* 715 F.Supp.2d 335, 356 (E.D.N.Y.2010) (quoting *RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC,* 156 Fed.Appx. 349, 350–51 (2d Cir.2005)). A breach of contract claim will withstand a motion to dismiss only if plaintiff "allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Sirohi v. Trs. of Columbia Univ.,* No. 97–7912, 1998 WL 642463, at *2, 1998 U.S.App. LEXIS 22519, at *5 (2d Cir. Apr. 16, 1998) (citation and internal quotation marks omitted).

Here, plaintiff has alleged the existence of a contract. (Am. Compl. ¶¶ 28–42.) Plaintiff has also alleged the essential terms of the parties' contract in nonconclusory language, (*see id.* (describing the various provisions of the Mortgage Agreement and Note)), including the specific provisions upon which liability is predicated (*see, e.g., id.* ¶ 42 (explaining that under the Mortgage Agreement, the lender, and not the loan servicer, may commence foreclosure proceedings against the debtor).) Plaintiff claims that he performed under the contract, but that AHMSI failed to perform, by "imposing or collecting sums that were not due or owing, issuing excessive Escrow projection statements[,] refusing to credit payments" and "threatening the commencement of foreclosure proceedings." (*Id.* ¶¶ 132–33.) Finally, because "[a] plaintiff is not obligated to show, on a motion to dismiss, that it actually sustained damages" and "need only plead allegations from which damages attributable to defendant's [breach] might be reasonably inferred," *Rock City Sound, Inc. v. Bashian & Farber, LLP,* 74 A.D.3d 1168, 903 N.Y.S.2d 517, 520 (2d Dep't 2010), plaintiff has adequately pled the fourth prong of his breach of contract claim, (*see* Am. Compl. ¶¶ 132–34.)

■ AHMSI contends that plaintiff, in failing to make timely payments on his Loan, did not adequately perform under the contract and, therefore, cannot maintain a cause of action for breach. (Def.'s Mot. at 16–18.) "A fundamental principle of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the non-breaching party." *Bear, Stearns Funding, Inc. v. Interface Grp.—Nev., Inc.,* 361 F.Supp.2d 283, 291 (S.D.N.Y.2005). Thus, AHMSI's argument is essentially that plaintiff committed a material breach of the contract, thereby releasing AHMSI of any duty to perform. However, because "[t]here might be a genuine issue of fact as to whether such a breach[, if any,] was material," it "cannot be said as a matter of law that any breach was material" at this stage in the litigation. *Johnson & Johnson v. Guidant Corp.,* 525 F.Supp.2d 336, 355–57 (S.D.N.Y.2007). As such, the Court declines to dismiss plaintiff's breach of contract claim on this basis.

■ AHMSI also contends that plaintiff's breach of contract claim should be dismissed because AHMSI is not a party to or in privity of contract with plaintiff and, therefore, cannot be held liable for breach. (Def.'s Mot. at 16–18.) A plaintiff "may not assert a cause of action to recover damages for breach of contract against a party whom is not in privity" of contract. *Yucyco, Ltd. v. Republic of Slovenia,* 984 F.Supp. 209, 215 (S.D.N.Y. 1997) (quotation omitted). Plaintiff merely alleges that the servicing rights to his Loan were transferred to AHMSI, but not that any contractual relationship existed between himself and AHMSI, a relationship that is required to maintain a breach of contract claim. *See Pereira v. Ocwen Loan Servicing, LLC,* 11–CV–2672 (SJF)(ETB), 2012 WL 1381193, at *3, 2012 U.S. Dist. LEXIS 56150, at *7 (E.D.N.Y. Apr. 18, 2012) (dismissing breach of contract claim because "[t]he complaint does not allege that a contractual relationship ever existed between plaintiffs and Ocwen; at most, plaintiffs allege that Ocwen became the servicer of their mortgage loan"); *In re Griffin,* 2010 WL 3928610, at *2–3, 2010 Bankr. LEXIS 3555, at *6 (explaining that servicer of a loan is not in contractual privity with debtors); *see also Pereira v. Ocwen Loan Servicing, LLC,* CV 11–2672, 2012 WL 1379340, at *4, 2012 U.S. Dist. LEXIS 56044, at *12 (E.D.N.Y. Mar. 12, 2012) (Report and Recommendation) ("[I]f Ocwen simply serviced the note, then Plaintiffs were never in contractual privity with Defendant, and hence this [breach of contract] claim should be dismissed."). As such, AHMSI cannot be held liable for breach of contract and plaintiff's claim must be dismissed.

■ In his opposition papers, plaintiff claims that, if an allegation is made that the servicer was acting as the agent for someone who was in privity of contract with plaintiff and that privity could be imputed to the servicer, AHMSI, a breach of contract claim can withstand a motion to dismiss. (Pl.'s Opp'n at 19.) New York law does allow privity to be imputed to an agent of the contracting party under certain narrow circumstances. *See In re Griffin,* 2010 WL 3928610, at *3, 2010 Bankr. LEXIS 3555, at *7 ("Certainly there's no allegation of ... privity in the complaint. Therefore, AHMSI cannot be liable for breach of contract absent such an allegation *or an allegation that it was acting as the agent for someone who was in privity and that privity can be imputed to it, which, again, is not alleged.*" (emphasis added)); *see generally In re Cavalry Constr., Inc.,* 428 B.R. 25, 31 (S.D.N.Y. 2010) ("The determination of whether the 'functional equivalent of privity' exists ... is a highly fact-dependent endeavor which must consider the de facto dealings between the relevant parties as well as the language of all relevant contracts.") How-

ever, in this case, there is no allegation that AHMSI was acting as the agent for one who was in privity of contract with plaintiff in plaintiff's amended complaint. Indeed, in the case plaintiff cites in support of this agency theory of privity of contract, the court dismissed the plaintiff's breach of contract claim precisely because the plaintiff failed to allege, in its complaint, that the loan servicer was acting as the agent for someone who was in privity and that privity could be imputed to it. *See In re Griffin,* 2010 WL 3928610, at *2–3, 2010 Bankr. LEXIS 3555, at *6. Given, however, that this is a pleading defect that can potentially be cured, the Court grants plaintiff leave to amend its complaint on this issue.

In sum, plaintiff's breach of contract claim is dismissed, but plaintiff is afforded leave to amend his complaint.

### 3. Implied Covenant of Good Faith and Fair Dealing

"Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance.'" *Tractebel Energy Mktg. v. AEP Power Mktg.,* 487 F.3d 89, 98 (2d Cir.2007). A claim for breach of such a covenant may be brought "only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." *Pearce v. Manhattan Ensemble Theatre, Inc.,* 528 F.Supp.2d 175, 180–81 (S.D.N.Y. 2007) (internal quotation marks omitted).

"Such a covenant is violated when a party promises commissions or profits and then does not act in good faith to permit such commissions or profits to be earned, thereby depriving the other party of the benefit of the bargain." *Bd. of Trs. v. BNY Mellon, N.A.,* No. 11 Civ. 6345(RJS), 2012 WL 3930112, at *4, 2012 U.S. Dist. LEXIS 132724, at *13–14 (S.D.N.Y. Sept. 10, 2012) (citation and quotation marks omitted).

However, a breach of the implied covenant of good faith and fair dealing is "'merely a breach of the underlying contract.'" *Shelton v. Sethna,* 10 Civ. 4128(TPG), 2012 WL 1022895, at *7, 2012 U.S. Dist. LEXIS 42194, at *21 (S.D.N.Y. Mar. 26, 2012) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir.1992)). Thus, "[t]here can be no breach of contract, or the implied covenant of good faith and fair dealing, without a governing valid contract." *Garrett v. Music Publ'g Co. of Am., LLC,* 740 F.Supp.2d 457, 463 (S.D.N.Y.2010). Given the Court's finding that plaintiff has failed to allege the existence of a contract between plaintiff and AHMSI to substantiate a breach of contract claim, plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing must be dismissed. *See Shelton,* 2012 WL 1022895, at *7, 2012 U.S. Dist. LEXIS 42194, at *22 ("[A] breach of the implied covenant of good faith and fair dealing ... cannot give rise to a second, freestanding cause of action.").[7]

---

**7.** The Court notes that, even if plaintiff amends his complaint to sufficiently state a claim for breach of contract, plaintiff's breach of the implied covenant of good faith and fair dealing would fail because it is entirely duplicative of the breach of contract claim. *See Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 81 (2d Cir.2002) ("New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of

contract claim, based upon the same facts, is also pled."); *BNY Mellon, N.A.,* 2012 WL 3930112, at *5, 2012 U.S. Dist. LEXIS 132724, at *14–15 (A "claim for breach of the implied covenant can be maintained in conjunction with a breach of contract claim only if it is based on allegations different from those underlying the accompanying breach of contract claim." (citation and quotation marks omitted)).

#### 4. Promissory Estoppel

 Plaintiff also brings a claim for promissory estoppel against AHMSI. Under New York law, to state a claim for promissory estoppel, a plaintiff must allege: "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir.2000). "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel"; the alleged promise must be clear and unambiguous. *BNY Mellon, N.A.*, 2012 WL 3930112, at *6–7, 2012 U.S. Dist. LEXIS 132724, at *19. However, "a detailed showing of the elements of promissory estoppel need not be shown to survive a preanswer motion to dismiss." *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F.Supp.2d 639, 654 (E.D.N.Y.2012) (citations omitted).

 AHMSI argues that plaintiff's promissory estoppel claim is based on a "promise to enter into a future written contract," which AHMSI contends is an unenforceable "agreement to agree" that is "not clear and unambiguous" and, as such, "cannot be the basis for a promissory estoppel claim." (Def.'s Mot. at 20.) Plaintiff insists that "[t]he real and true promise for which estoppel is sought here is the promise that AHMSI would send purported forbearance agreements to borrowers for signature if they first remitted a substantial reinstatement payment on their loans that were allegedly in default." (Pl.'s Opp'n at 21.) Viewing the facts alleged in the amended complaint in the light most favorable to plaintiff, the Court, for purposes of the pending motion to dismiss, concludes that plaintiff has articulated a plausible clear and unambiguous promise. Specifically, plaintiff's promissory estoppel cause of action is based on AHMSI's alleged promise to send plaintiff a forbearance agreement upon his making of an $8,000 reinstatement payment. That allegation is not an agreement to agree; rather, it is an alleged agreement to perform a certain act once a condition is met by plaintiff.

The allegations in plaintiff's amended complaint similarly articulate the other two elements of a promissory estoppel claim. As for reasonable and foreseeable reliance, plaintiff asserted that he sent AHMSI a cashier's check in the amount of $8,000 in reliance on AHMSI's promise to send him a forbearance agreement. (Am. Compl. ¶ 63.) As to injury, plaintiff asserted that despite AHMSI's assurances to the contrary, he never received the forbearance agreement (an agreement that plaintiff believed, once executed, would lead to his Loan being reinstated). (*Id.* ¶¶ 62, 71.) AHMSI contends that plaintiff fails to allege detrimental reliance because (1) his $8,000 check was later returned, and (2) plaintiff's Loan was already outstanding at that point in time for more than $8,000. (*See* Def.'s Mot. at 21–22.) However, AHMSI, at the pleading stage, "cannot say conclusively that [plaintiff] could not have sought or considered other financial alternatives if he did not rely" on AHMSI's alleged promise. *Mendez*, 840 F.Supp.2d at 655. Thus, because the Court cannot determine whether plaintiff will ultimately prevail in establishing detrimental reliance in deciding this motion to dismiss, the Court concludes that plaintiff's pleading of detrimental reliance is sufficient to "entitle[ ][him] to obtain discovery and offer evidence to support his claim." *Id.*

Given that plaintiff has adequately alleged reasonable reliance on a clear and unambiguous promise made by AHMSI and an injury resulting from such reliance, AHMSI's motion to dismiss plaintiff's promissory estoppel claim is denied.

### 5. Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.2000) (internal quotation marks omitted). Here, plaintiff has alleged that AHMSI improperly withheld insurance funds. Specifically, plaintiff claims that he sent an insurance check to AHMSI to secure its endorsement, but that AHMSI never endorsed the check to plaintiff and, instead, "mailed Plaintiff a check in the amount of $3,750.00, holding back to itself more than $3,000 of the funds...." (Am. Compl. ¶¶ 96, 100–01.) Plaintiff claims that he is still "out-of-pocket the funds that have been paid by the insurer and misappropriated by AHMSI." (*Id.* ¶ 106.) Thus, viewing the facts alleged in the amended complaint in the light most favorable to plaintiff, plaintiff has sufficiently stated a plausible unjust enrichment claim.

A claim for unjust enrichment must be dismissed if the existence of a contract is proven. *See Brown v. Brown*, 12 A.D.3d 176, 785 N.Y.S.2d 417, 419 (1st Dep't 2004) (Unjust enrichment is "precluded by the fact that a simple breach of contract claim may not be considered a tort unless a legal duty independent of the contract—i.e., one arising out of circumstances extraneous to, and not constituting elements of, the contract itself—has been violated."). Thus, if a contract between plaintiff and AHMSI is found to exist, plaintiff will be barred from bringing his unjust enrichment claim. However, until such a finding is made, plaintiff may bring a claim for unjust enrichment. *See St. John's Univ., N.Y. v. Bolton*, 757 F.Supp.2d 144, 183–84 (E.D.N.Y.2010) ("At the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims.... Rule 8(d) [of the Federal Rules of Civil Procedure] ... permit[s] plaintiffs to allege claims in the alternative, even if the legal theories underlying those claims are technically inconsistent or contradictory."). Thus, because plaintiff has sufficiently pled a plausible unjust enrichment claim, his claim survives AHMSI's motion to dismiss.

### IV. CONCLUSION

For the foregoing reasons, the Court denies AHMSI's motion to dismiss with respect to plaintiff's FDCPA, RESPA, Section 349, promissory estoppel, and unjust enrichment claims. The Court grants AHMSI's motion to dismiss with respect to plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims, but will grant plaintiff leave to re-plead the breach of contract claim.

SO ORDERED.