David **ALIBRANDI**, On behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

**FINANCIAL OUTSOURCING SERVICES, INC.**, Defendant–Appellee.

Docket No. 02–7540.

United States Court of Appeals, Second Circuit.

Argued: Feb. 20, 2003.

Decided: June 18, 2003.

Lawrence Katz (Lance A. Raphael, of counsel), Katz & Kleinman, Uniondale, NY, for Plaintiff–Appellant.

Ian Chesir–Teran, Ohrenstein & Brown, LLP, New York, NY, for Defendant–Appellee.

Before: OAKES, KEARSE, and B.D. PARKER, Jr., Circuit Judges.

PER CURIAM.

David Alibrandi appeals from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*), granting Financial Outsourcing Services, Inc. summary judgment and dismissing Alibrandi's claim under the Fair Debt Collection Practices Act (the "FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq.* Alibrandi alleged that in a January 27, 2000 letter seeking payment of a debt he owed to First Union National Bank, Financial Outsourcing did not include the warnings and declarations of debtor rights that the Act requires to be included in correspondence from debt collectors. *See* 15 U.S.C. §§ 1692e(11), 1692g(a) (1997).

The district court found that, because First Union and Financial Outsourcing deemed Alibrandi's debts not to be in default when Financial Outsourcing wrote to him, Financial Outsourcing was not a "debt collector" and the FDCPA did not require the January 27, 2000 letter to contain the statutory warnings. Accordingly, the court granted Financial Outsourcing's motion for summary judgment and dismissed the case. Alibrandi appealed. We hold that if First Union retained North Shore Agency, Inc., and, by reason of a letter that North Shore as its agent sent to Alibrandi, in effect declared Alibrandi's debt to be in default before First Union referred his account to Financial Outsourcing, the January 27, 2000 letter was required to include the warnings. Because it does not appear at this point that Alibrandi's contentions as to First Union's retention of North Shore and North Shore's communication with him are undisputed, we vacate the judgment and remand for further proceedings.

## BACKGROUND

In October 1999 at the conclusion of an automobile lease, First Union, the lessor, concluded that Alibrandi owed it $543.98 due to excess wear and tear on the vehicle. Apparently, First Union retained North Shore to help collect the money and, on November 10, 1999, North Shore wrote to Alibrandi on behalf of First Union seeking payment. In this letter, North Shore stated that it was a debt collector and cautioned Alibrandi that "[s]erious collection of your account with our client, First Union National Bank, begins with this letter." The letter contained the warnings that the FDCPA requires to be included in debt-collector correspondence. *See* 15 U.S.C. §§ 1692e(11), 1692g. For example, it informed Alibrandi that he could challenge the debt's validity, that there would be consequences for his failure to do so, and that any information North Shore obtained would be used for collection purposes.

As of January 21, 2000, Alibrandi had neither disputed nor paid the debt, and First Union apparently shifted collection responsibility from North Shore to Financial Outsourcing. In structuring its relationship with Financial Outsourcing, First Union envisioned Financial Outsourcing not as a debt collector but as a debt "service provider" whose job was to remind account holders to pay debts that were outstanding but not in default. Significantly, if Financial Outsourcing were a debt service provider, its correspondence with debtors would not have to include the statutory warnings. Debt servicing can be conducted before a debt goes into default, and the FDCPA only requires the warnings to be included in correspondence by

"debt collectors" who, by definition, attempt to collect debts in default. According to Financial Outsourcing's contract with First Union:

1. First Union National Bank does not consider these accounts delinquent. Financial [Outsourcing] shall act as a service provider and not a collection agency when handling these accounts. Financial shall not make numerous phone calls at early or late hours nor send numerous letters to such customers. All form letters must be preapproved by First Union.

2. Undisputed accounts that are not paid within 120 days will be recalled and assigned to a collection agency for resolution.

(Letter from Stein to Myers of Jan. 15, 1998 ("Jan. 15, 1998 Letter"), at 1).

On January 27, 2000, Financial Outsourcing wrote Alibrandi, seeking payment of the money he owed First Union. At this time, Financial Outsourcing was unaware of North Shore's letter to Alibrandi. The Financial Outsourcing letter stated:

We are servicing the above referenced account on behalf of First Union National Bank. Your account is not in default.

Your recently expired lease has a deficiency balance which is noted above. This is in accordance with the contract terms that you signed at the lease inception. The balance due is a result of either excess mileage[,] wear and tear[,] or other fees associated with the terms of your lease.

Please remit payment using the enclosed envelope.

Should you have any questions, please contact our office, toll-free, ... as our staff is prepared to assist you.

(Letter from Financial Outsourcing to Alibrandi of Jan. 27, 2000, at 1.)

Financial Outsourcing's key phrases were that it was "servicing" Alibrandi's account and that the account was "not in default." Had Financial Outsourcing been "collecting" rather than "servicing" the debt and had the debt been in "default" as opposed to simply carrying a "deficiency balance," Financial Outsourcing would have been required to provide Alibrandi the warnings required of debt collectors. See 15 U.S.C. §§ 1692e(11), 1692g.

Alibrandi sued Financial Outsourcing, alleging violations of the FDCPA and seeking damages on behalf of himself and a purported class. Specifically, Alibrandi alleged that he had defaulted on his obligation to First Union as of October 1999 and that Financial Outsourcing's January 27, 2000 letter did not contain the warnings the Act requires of debt collectors' correspondence. In response, Financial Outsourcing maintained that it was not a "debt collector" under the FDCPA because it had agreed in its contract with First Union that it was not one and had also agreed that debts such as Alibrandi's would not be considered "delinquent," much less in default.

In granting Financial Outsourcing summary judgment, the district court rejected Alibrandi's argument that a debt goes into default immediately after it becomes due. The court further concluded that, in January 2000, Financial Outsourcing was not a "debt collector" under the FDCPA and, consequently, its correspondence was not governed by the requirements of the FDCPA. The court accordingly dismissed the case pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(c), and 56.[1] Alibrandi appealed. We now vacate.

---

1. Although the district court dismissed this case in part on jurisdictional grounds under

Rule 12(b)(1), apparently because it concluded that Financial Outsourcing was not a "debt

## DISCUSSION

We review a grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. *Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 423 (2d Cir.2002). "Summary judgment is appropriate only if it can be established that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)).

This case turns on the definition of "default" for the purposes of the FDCPA. If Alibrandi's debt was not in default when Financial Outsourcing wrote to him, Financial Outsourcing could not have been a debt collector under the Act, and the contents of its January 27, 2000 letter would not have to contain the statutory warnings. On appeal, Alibrandi advances two theories as to why Financial Outsourcing was a debt collector: (1) his debt was in default immediately after it became due; and (2) prior to Financial Outsourcing's letter, First Union, through North Shore, had already declared Alibrandi's debt to be in default by virtue of North Shore's self-identification as a "debt collector."

◼ Congress designed the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (1997). Although creditors generally are not subject to the FDCPA, *see Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir.1998), the Act subjects third-party debt collectors to limitations on the content and nature of their correspondence with debtors, *see* 15 U.S.C. §§ 1692e(11),[2] 1692g(a).[3]

collector" within the meaning of the FDCPA, we note that federal subject matter jurisdiction existed by virtue of Alibrandi's seeking relief under the FDCPA in his complaint. *See Carlson v. Principal Fin. Group*, 320 F.3d 301, 305–07 (2d Cir.2003) (holding that where complaint, on its face, seeks relief under federal statute, district court has subject matter jurisdiction, regardless of claim's validity). Nevertheless, Alibrandi does not appeal on this ground.

2.  Under § 1692e:

    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
    . . .
    (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose

in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

3.  Section 1692g(a) provides:

    Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-
    (1) the amount of the debt;
    (2) the name of the creditor to whom the debt is owed;
    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a

For the purposes of the FDCPA, a "debt collector" is one who

> uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6) (1997).

The FDCPA, however, provides a number of exceptions to this definition. One such exception is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity... (iii) concerns a debt *which was not in default* at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F) (emphasis added). Thus, under § 1692a(6)(F)(iii), the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used.

Unfortunately, the FDCPA does not define so key a term as "default." In its March 2001 annual report on the FDCPA, the Federal Trade Commission (the "FTC") formally recommended that Congress amend § 1692a(6)(F)(iii) "so that its applicability will depend upon the nature of the overall business conducted by the party to be exempted rather than the status of individual obligations when the party obtained them." FTC Annual Report: FDCPA, http://www.ftc.gov/os/2001/03/fdcpaar2000.htm (Mar.2001). Congress has not acted on the FTC's recommendation.

Insisting that a debt goes into default as soon as it is due, Alibrandi relies on Black's Law Dictionary, which defines default as "an 'omission or failure to perform a legal or contractual duty ... [or] to observe a promise or discharge an obligation (*e.g.*, to pay interest or principal on a debt when due).'" (Br. for Plaintiff–Appellant at 4 (quoting Black's Law Dictionary 376 (5th ed. 1979))). Although classifying a debt as in default immediately after it first becomes due may have a certain facile appeal, this approach is at odds with how the term is generally understood.

In applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding,[4] emphasizing that only after some period of time does an outstanding debt go into default. *See, e.g., Skerry v. Mass. Higher Educ. Assistance Corp.*, 73

---

judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

4. According to the terms of First Union's contract with Financial Outsourcing, First Union did not even consider Alibrandi's account "delinquent," much less in default, for the first 120 days after it came due. (Jan. 15, 1998 Letter at 1.) For the purposes of this opinion, we will use the word "outstanding" to refer to debts that are past due.

F.Supp.2d 47, 51 (D.Mass.1999); *Jones v. Intuition, Inc.*, 12 F.Supp.2d 775, 779 (W.D.Tenn.1998) ("Prior to the default period, the unpaid loan installment is considered delinquent."). In cases involving student loan collections under the FDCPA, for example, courts have regularly imported a Federal Family Education Loan Program ("FFELP") definition of "default," 34 C.F.R. § 682.200(b) (1998), under which a debt that is repayable in monthly installments goes into default after 180 days of delinquency. *See, e.g., Skerry,* 73 F.Supp.2d at 51; *Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F.Supp.2d 1161, 1180 (N.D.Ala.1999) (stating that the "specific requirements of the FFELP and attendant regulations take preference over any general inconsistencies with the FDCPA"); *Jones,* 12 F.Supp.2d at 779; *Games v. Cavazos,* 737 F.Supp. 1368, 1391 (D.Del. 1990). Likewise, various other federal regulations have defined default as commencing anywhere between thirty and 270 days after a debt becomes due. *See, e.g.,* 7 C.F.R. § 762.141(a) (1999) (30 days for farm loans); 12 C.F.R. § 336.3(c) (1999) (90 days for loans by federal insured depository institutions to Federal Deposit Insurance Corporation employees); 34 C.F.R. § 685.102(b) (1999) (270 days for certain student loans). Although these judicial decisions and regulations reflect inconsistent periods of time preceding default, they all agree that default does not occur until well after a debt becomes outstanding. Significantly, other than the dictionary, Alibrandi cites no authority for the proposition that default occurs *immediately* after a debt becomes due.

Given the persistent ambiguity of the term "default," we look to the underlying purpose of the statute. *See N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). We conclude that the FDCPA's broad, pro-debtor objectives would not be served if we adopted Alibrandi's argument that default occurs immediately after payment becomes due. Alibrandi's position involves a curious role reversal—a debtor arguing that his debt was in default at the earliest possible time—and has the paradoxical effect of immediately exposing debtors to the sort of adverse measures, such as acceleration, repossession, increased interest rates, and negative reports to credit bureaus, from which the Act intended to afford debtors a measure of protection. We believe it ill-advised to adopt an approach that precipitously visits these consequences upon debtors.[5]

Our rejection of Alibrandi's definition does not end the matter. Advancing an alternative argument, Alibrandi maintains that, prior to Financial Outsourcing's involvement, First Union had already declared the debt to be in default when North Shore, on behalf of First Union, specifically informed him that it, North Shore, was a "debt collector." Construing the facts in the light most favorable to Alibrandi, we agree. As we have seen, the North Shore letter contained the warnings and disclaimers required of debt collectors by the Act and apparently underscored a change in First Union's approach to the debt in question, cautioning Alibrandi that "[s]erious collection of your account with our client, First Union National Bank, be-

---

**5.** Until Congress ends the statutory silence surrounding the term "default," we conclude that the interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default, according to their respective circumstances and business interests. Once the parties have contractually set the period of delinquency preceding default, it will be a relatively simple matter to determine whether the Act applies.

gins with this letter." Under the Act an entity cannot be a debt collector unless the debt it attempts to collect is in default. *See* 15 U.S.C. § 1692a(6)(F)(iii). If First Union hired North Shore to pursue Alibrandi's debt, North Shore's self-identification as a debt collector constituted a declaration by First Union that Alibrandi's debt was in default.

■ Financial Outsourcing contends that, irrespective of any arrangement First Union may have had with North Shore, it agreed with First Union that it would act only "as a service provider and not a collection agency" when handling the accounts that First Union forwarded for collection. But if Alibrandi's debt was in default when Financial Outsourcing obtained it, Financial Outsourcing had no ability to change that status through an agreement with First Union. The status of the debt would not have been alterable by the expedient of a letter agreement between First Union and Financial Outsourcing. Financial Outsourcing may sincerely have believed it was servicing a debt that was not in default, but that is irrelevant. If First Union had, through North Shore, declared Alibrandi's outstanding debt to be in default, then the default would have continued during Financial Outsourcing's subsequent collection efforts and Financial Outsourcing would have been obligated to include in its correspondence with Alibrandi the warnings required by the Act.

### CONCLUSION

The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.