Nicholas **ZIROGIANNIS**, individually and on behalf of a class, Plaintiff,

v.

**SETERUS, INC.**, Defendant.

15–cv–5884 (SJF)(ARL)

United States District Court, E.D. New York.

Signed 11/28/2016

Abraham Kleinman, Kleinman, LLC, Uniondale, NY, Tiffany N. Hardy, Edelman Combs Latturner & Goodwin LLC, Chicago, IL, for Plaintiff.

Allison J. Schoenthal, Courtney Lynne Colligan, Lisa Fried, Hogan Lovells US LLP, New York, NY, for Defendant.

## OPINION AND ORDER

FEUERSTEIN, District Judge:

Plaintiff Nicholas Zirogiannis ("Plaintiff" or "Zirogiannis") commenced this action against Defendant Seterus, Inc. ("Defendant" or "Seterus"), individually and on behalf of a class, seeking to recover for Defendant's alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq. See* Docket Entry ("DE") [1]. Presently before the Court is Seterus's motion to dismiss Plaintiff's

Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, which Plaintiff opposes. DE [24]. For the reasons set forth herein. Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint, DE [16], and are accepted as true for purposes of the instant motion.

### A. Factual Background

This action arises out of Defendant's efforts to collect a debt that Plaintiff incurred for personal, family, or household purposes. Am. Compl. ¶¶ 14–20. Zirogiannis owns and resides in a single-family home in Melville, New York. *Id.* at ¶ 4. Seterus is a Delaware corporation with a principal place of business in Beaverton, Oregon. *Id.* at ¶ 5. Defendant conducts business in New York, and is "engaged in the business of servicing residential mortgage loans" owned by third parties. *Id.* at ¶¶ 5–7. Zirogiannis alleges that Defendant "is a debt collector as defined in the FDCPA." *Id.* at ¶ 12.

Many of the loans that Defendant services "are delinquent or claimed by Seterus to be delinquent when Seterus first becomes involved with them." *Id.* at ¶ 9. According to Plaintiff, his "loan was one such loan." *Id.* at ¶ 10. On or about May 14, 2015. Seterus sent Zirogiannis a form letter "[a]s the servicer and debt collector" of Plaintiff's loan (the "Collection Letter"). *Id.* at ¶¶ 14–18, Ex. A. The Collection Letter states in relevant part:

> Below is the amount of your debt as of the date of this notice, according to our records and information received from your prior servicer. It is not a payoff statement. A payoff amount might in-

clude additional third-party costs that have not yet been paid by your prior servicer and future costs that may be necessary. A payoff quote is available at www.seterus.com or through our automated phone system (866.570.5277).

## SUMMARY OF TOTAL DEBT COMPOSITION

| Loan Balance, Interest, and Escrow: | | Funds Held: | |
|---|---|---|---|
| Current Principal Balance: | $270,933.74 | Less Suspense Balance: | $.00 |
| Unpaid Interest: | $94,441.31 | Less Buy-Down Funds: | $.00 |
| Escrow Overdraft: | $55,552.30 | Less Pending Expense Credit: | $.00 |
| Interest Arrearage: | $.00 | | |
| Escrow Arrearage: | $.00 | | |
| **Advances on Borrower's Behalf:** | | **Servicer Charges:** | |
| Association Dues: | $.00 | Late Charges: | $37.48 |
| Bankruptcy: | $.00 | Returned Check Charges: | $.00 |
| Foreclosure: | $2,622.64 | Other Charges: | $.00 |
| Legal/Attorney: | $.00 | | |
| Property Inspections: | $661.50 | | |
| Property Preservation: | $.00 | | |
| Short Payments: | $.00 | | |
| Taxes and Insurance: | $.00 | | |
| Title: | $.00 | | |
| Valuations: | $90.00 | | |
| Other: | $.00 | | |

**Total Amount of Your Debt: $424,338.97**

*Id.* at Ex. A.

## B. Procedural Background

By way of a Complaint dated October 13, 2015. Plaintiff commenced this action on behalf of himself and on behalf of a class including all natural persons with New York addresses to whom Seterus sent a letter similar to the Collection Letter between October 13, 2014 and November 3, 2015. DE [1]. On December 7, 2015, Seterus served a motion to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) on the grounds that Plaintiff: (i) lacked standing because he had not suffered an injury as a result of the Collection Letter; and (ii) failed to state a claim arising under the FDCPA. DE [15]. On December 16, 2015, Zirogiannis filed the Amended Complaint, alleging a single

cause of action arising under the FDCPA. DE [16]. According to Plaintiff, Defendant violated 15 U.S.C. § 1692g because the Collection Letter "does not state the amount of the debt." but rather, "states that the debt 'might include additional third-party costs that have not yet been paid by your prior servicer ....'" Am. Compl. ¶¶ 22, 23. Zirogiannis seeks to recover statutory damages, attorneys' fees, and costs. DE [16].

On March 30, 2016, Defendant submitted the instant motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). DE [24]. According to Seterus, Plaintiff lacks standing because he "fails to allege a particularized injury sustained as a result of his receipt of the letter in question."[1] *See* Defendant Seterus, Inc.'s

1. In the alternative, Defendant requested that its motion be held in abeyance until the Supreme Court issued a decision in *Spokeo, Inc. v. Robins*, No. 13–1339. Def.'s Mem. at 7–9.

On May 16, 2016, while the instant motion was pending, the Supreme Court issued its decision in *Spokeo. See Spokeo, Inc. v. Robins*, ——— U.S. ———, 136 S.Ct. 1540, 194 L.Ed.2d

Memorandum in Support of its Motion to Dismiss the Amended Complaint ("Def.'s Mem."), DE [24–1], at 1. Defendant further argues that Plaintiff fails to state a claim arising under the FDCPA because: (i) Plaintiff fails to allege that Seterus is a debt collector within the meaning of the FDCPA, and (ii) the Collection Letter accurately states the amount of Plaintiff's debt. *Id.* at 2. In opposition, Plaintiff argues, *inter alia*, that "a plaintiff asserting claims under the FDCPA need only assert that proper disclosures were not made to have asserted an 'injury in fact' supporting Article III standing." *See* Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint ("Pl.'s Opp'n"), DE [24–2], at 8. Zirogiannis further argues that his allegations establish that: (i) Seterus is a debt collector "as a servicer of a large portfolio of third party owned mortgage loans which were in default when it took over servicing"; and (ii) the Collection Letter "fails to accurately state the amount of the debt by referring to amounts currently owed without specifying those amounts." *Id.* at 1.

On April 13, 2016, Plaintiff filed a motion to strike arguments raised in Defendant's memorandum of law in reply to Plaintiff's opposition. DE [25]. According to Plaintiff, in its memorandum of law in reply, "Defendant advances a new Article III standing argument that it failed to raise in its opening brief, thereby depriving plaintiff of an opportunity to respond to the argument." *See* Plaintiff's Motion to Strike New Arguments Raised in Defendant's Reply Brief ("Pl.'s Strike Mem."), DE [25], at 1. In opposition, Seterus argues that the arguments raised in its memorandum of law in reply "(1) [are] necessary to rebut and distinguish case law cited in Plaintiff's opposition papers, and (2) revisit[ ] arguments and case law discussed in [Defendant's] Opening Brief." *See* Defendant Seterus, Inc.'s Memorandum in Opposition to Plaintiff's Motion to Strike Portions of Reply Brief ("Def.'s Strike Opp'n"), DE [26], at 2.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1) Standard

An objection to a plaintiff's standing "is properly made on a Rule 12(b)(1) motion." *Tasini v. New York Times Co., Inc.*, 184 F.Supp.2d 350, 354 (S.D.N.Y. 2002); *see also City of New York v. Milhelm Attea & Bros., Inc.*, 550 F.Supp.2d 332, 340 (E.D.N.Y. 2008) ("As standing is a limitation on the authority of a federal court to exercise jurisdiction, it is properly addressed within the context of a Rule 12(b)(1) motion.") (internal quotation omitted). To survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F.Supp.3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In deciding a Rule 12(b)(1) motion, the court "must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F.Supp.2d 443, 449 (S.D.N.Y. 2001). On a motion to dismiss for lack of subject matter jurisdiction, "the Court may consider affidavits and other material beyond the pleadings to

635 (2016). Thereafter, the parties submitted supplemental briefing addressing how, if at all. *Spokeo* affects Plaintiff's standing in this action. *See* Defendant's Notice of Supplemental Authority ("Def.'s Supp. Br."), DE [28]; Plaintiff's Response to Defendant's Notice of Supplemental Authority ("Pl.'s Supp. Br."), DE [32].

resolve the jurisdictional question." *Forbes v. State Univ. of New York at Stony Brook*, 259 F.Supp.2d 227, 231–32 (E.D.N.Y. 2003). The party advocating for subject matter jurisdiction "must show by a preponderance of the evidence that subject matter jurisdiction exists." *Lifrak v. New York City Council*, 389 F.Supp.2d 500, 502 (S.D.N.Y. 2005).

### B. Fed. R. Civ. P. 12(b)(6) Standard

■ In order to survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F.Supp.2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated ... by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Messina v. Mazzeo*, 854 F.Supp. 116, 128 (E.D.N.Y. 1994) ("The court's consideration on a motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.").

## III. DISCUSSION

As discussed above, Seterus moves to dismiss the Amended Complaint on the grounds that Plaintiff: (i) lacks standing because he did not suffer an injury in fact as a result of the Collection Letter, and (ii) fails to allege that the Collection Letter violated the FDCPA. Def.'s Mem. at 7, 10–22. For the reasons set forth herein, Defendant's motion is granted in part and denied in part.

### A. Motion to Strike

■ As an initial matter, the Court considers Plaintiff's motion to strike portions of Defendant's memorandum of law in reply to his opposition. It is well-established that "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). Therefore, "[n]ew arguments first raised in reply papers in support of a motion will not be considered." *Domino Media, Inc. v. Kranis*, 9 F.Supp.2d 374, 387 (S.D.N.Y. 1998). However, "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) (quoting *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000)).

Defendant's memorandum of law in reply does not raise new issues or arguments, but rather, addresses and responds to arguments raised in Plaintiff's memorandum of law in opposition. In his opposition, Zirogiannis argues that "the Second Circuit does not as a rule require allegations of injury beyond statutory violation . . . ." Pl.'s Opp'n at 5. In response, Defendant acknowledges that "statutes *can* create legal rights, the violation of which constitutes sufficient injury to confer standing to sue," but argues that "Section 1692g grants no such right." *See* Defendant Seterus, Inc.'s Reply Memorandum in Further Support of its Motion to Dismiss the Amended Complaint ("Def.'s Reply Mem."), DE [24-9], at 6-7 (emphasis in original). As Defendant's arguments are responsive to Plaintiff's memorandum of law in opposition, Defendant has not improperly asserted arguments for the first time in its memorandum of law in reply. Therefore, Plaintiff's motion to strike portions of Defendant's memorandum of law in reply is denied.

### B. Plaintiff has Standing

Article III, Section 2 of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Genesis Healthcare Corp. v. Symczyk*, ––– U.S. –––, 133 S.Ct. 1523, 1528, 185 L.Ed.2d 636 (2013) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). The doctrine of standing "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351

(1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). Therefore, "[c]onstitutional standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Berkson v. Gogo LLC*, 97 F.Supp.3d 359, 405 (E.D.N.Y. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

To adequately allege standing, "a plaintiff needs to 'show that the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress.'" *Leder v. Am. Traffic Sols., Inc.*, 81 F.Supp.3d 211, 220 (E.D.N.Y. 2015) (quoting *Palmieri v. Town of Babylon*, 277 Fed.Appx. 72, 75 (2d Cir. 2008)); *see also Lujan*, 504 U.S. at 560-61, 112 S.Ct. at 2136 (describing elements of the "irreducible constitutional minimum of standing"). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136 (internal citations and quotations omitted). The Supreme Court has held, "[t]hat a suit may be a class action adds nothing to the question of standing . . . ." *Lewis v. Casey*, 518 U.S. 343, 357, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606 (1996). Therefore, "[a] putative class representative lacks standing to bring a claim if he or she did not suffer the injury that gives rise to that claim." *Thomas v. JPMorgan Chase & Co.*, 811 F.Supp.2d 781, 790 (S.D.N.Y. 2011).

In *Spokeo, Inc. v. Robins*, ––– U.S. –––, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), the Supreme Court examined Article III standing's injury-in-fact requirement, holding that "injury-in-fact . . . requires a plaintiff to allege an injury that is

both 'concrete *and* particularized.'" 136 S.Ct. at 1545 (emphasis in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000)). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548. For an injury to be "concrete," it "must be *'de facto'*; that is, it must actually exist." *Id.*; *see also Bellino v. JPMorgan Chase Bank, N.A.*, 209 F.Supp.3d 601, 604–05, 2016 WL 5173392, at *2 (S.D.N.Y. Sept. 20, 2016) ("Concreteness ... refers to the realness of the injury."). However, an injury need not be tangible for it to be "concrete." *Spokeo*, 136 S.Ct. at 1549 ("[W]e have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."); *see also Zink v. First Niagara Bank, N.A.*, 206 F. Supp. 3d 810, 816, 2016 WL 3950957, at *4 (W.D.N.Y. July 1, 2016) ("[A] concrete injury is not necessarily synonymous with tangible.") (internal quotation omitted).

■ In determining whether an intangible harm is concrete for purposes of Article III standing, "both history and the judgment of Congress play important roles." *Spokeo*, 136 S.Ct. at 1549. As Congress "is well positioned to identify intangible harms that meet minimum Article III requirements," *id.* it may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law ...." *Lujan*, 504 U.S. at 578, 112 S.Ct. at 2145. Nevertheless, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S.Ct. at 1549. Therefore, a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* In contrast, where a "real risk of harm" satis-

fies the concreteness requirement, "the violation of a procedural right granted by statute can be sufficient ... to constitute injury in fact." *Id.* Ultimately, where the plaintiff alleges an intangible injury, the court must examine whether the violation at issue "entail[s] a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

■ Zirogiannis's allegations, accepted as true, establish that he suffered an injury in fact sufficient to confer Article III standing. Plaintiff alleges that he personally received the Collection Letter, and that the Collection Letter failed to convey statutorily required information. Am. Compl. ¶¶ 14, 23–26. As a result, Plaintiff alleges that he was "deprived of the information required to be provided by statute ...." *Id.* at ¶ 26. Although a plaintiff's "abstract interest in accurate information from an entity—without any actual or imminent injury arising from the entity's failure to disclose such information—does not constitute a 'concrete and particularized' injury," *Ross v. AXA Equitable Life Ins. Co.*, 115 F.Supp.3d 424, 435 (S.D.N.Y. 2015), Zirogiannis has an actual, concrete interest in receiving accurate information regarding the amount of his debt. *See Easterling v. Collecto, Inc.*, 692 F.3d 229, 235 (2d Cir. 2012) (holding that the plaintiff stated a claim arising under the FDCPA where a collection letter could have hypothetically affected her decision-making regarding the debt); *see also Kaff v. Nationwide Credit, Inc.*, No. 13–CV–5413, 2015 WL 12660327, at *2 n.1 (E.D.N.Y. Mar. 31, 2015) ("[The plaintiff] has a right under the FDCPA to be free of abusive debt collection practices and that right was infringed when he received a collection letter which potentially increased the amount of debt collected ...."). Therefore, Plaintiff's allegations that the Collection Letter failed to accurately state the amount of his debt are

sufficient to establish an injury that is both particular and concrete. *See, e.g., Kaff,* 2015 WL 12660327, at \*2 n.1; *Wallace v. New York,* 40 F.Supp.3d 278, 296 (E.D.N.Y. 2014) (holding that an injury was particular to the plaintiff where "the plaintiff [was] himself among the injured and not simply someone who retain[ed] a special interest in the injury") (internal quotations omitted).

In moving to dismiss the Amended Complaint, Seterus argues that Plaintiff's "Complaint is devoid of any factual allegations indicating how Plaintiff was injured by Seterus's alleged conduct." Def.'s Mem. at 7. According to Seterus, "Plaintiff has not, and cannot identify any risk of real harm arising from Seterus' sending, and his receipt, of the notice." Def.'s Supp. Br. at 2. However, as discussed above, a debtor has an interest in receiving accurate information regarding the amount of his debt, and courts analyzing Article III standing in the wake of *Spokeo* have held that a violation of the FDCPA is sufficient to establish a concrete harm. *See, e.g., Church v. Accretive Health, Inc.,* 654 Fed. Appx. 990, 995 (11th Cir. 2016) ("[The plaintiff] has sufficiently alleged that she has sustained a concrete—*i.e.,* 'real'—injury because she did not receive the allegedly required disclosures."); *Quinn v. Specialized Loan Servicing, LLC,* No. 16 C 2021, 2016 WL 4264967, at \*5 (N.D. Ill. Aug. 11, 2016) ("[The defendant's] alleged failure to provide [the plaintiffs] with information required under the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing."). Therefore, Defendant's argument that Plaintiff is not at risk of harm from his alleged non-receipt of information lacks merit.

Relying upon *Ehrich v. Credit Prot. Ass'n, L.P.,* 891 F.Supp.2d 414 (E.D.N.Y. 2012), Defendant further argues that allegations of "a statutory violation without

enumerating how the Plaintiff was affected by such conduct" are insufficient to establish standing. Def.'s Mem. at 7. In *Ehrich,* the plaintiff, who did not speak Spanish, alleged that a collection letter's inclusion of "Spanish phrases without a Spanish translation of the FDCPA-mandated disclosures and notices provided in English could mislead Spanish-speaking consumers and cause them to inadvertently waive their rights under the FDCPA." 891 F.Supp.2d at 415. In granting the defendant's motion for judgment on the pleadings, the court held that "a notice that contained all disclosures required by the FDCPA and that [the plaintiff] fully understood, simply does not constitute a cognizable injury, statutory or otherwise, sufficient to support standing." *Id.* at 417–18. Unlike *Ehrich,* Zirogiannis alleges that the Collection Letter fails to state the accurate amount of his debt in violation of 15 U.S.C. § 1692g(a)(1). Am. Compl. ¶¶ 22–26. As Plaintiff alleges that he was deprived of information to which he was statutorily entitled, his allegations are sufficient to establish an injury in fact. *See Bellino,* 209 F.Supp.3d at 612, 2016 WL 5173392, at \*9 (holding that the plaintiff had standing where he alleged that the defendant violated a statute that "create[d] a substantive right for [the] Plaintiff").

Based on the foregoing, Zirogiannis's allegations are sufficient to establish his standing under the FDCPA. Therefore, Defendant's motion to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is denied.

## C.  Plaintiff Fails to State a Claim Arising Under the FDCPA

Congress enacted the FDCPA "with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that 'those debt col-

lectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692(e)). To state a claim arising under the FDCPA: "(1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Schuh v. Druckman & Sinel, L.L.P.*, 751 F.Supp.2d 542, 548 (S.D.N.Y. 2010); *see also Feldman v. Sanders Legal Grp.*, 914 F.Supp.2d 595, 599 (S.D.N.Y. 2012) ("[A] defendant can only be held liable for violating the FDCPA if he is a 'debt collector' within the meaning of the Act.").

■ The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was originated by such person." *Id.* at § 1692a(6)(F). A mortgage servicer is a "debt collector" within the meaning of the FDCPA if the mortgage was in default at the time the servicer began servicing the debt. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 442 (E.D.N.Y. 2013) (holding that a mortgage servicer was a "debt collector" when it obtained a mortgage loan that was in default when it began servicing the loan). In contrast, where a mortgage servicer ob-

tains a loan that is not in default, it is not a debt collector within the meaning of the FDCPA. *See Diaz v. Residential Credit Sols., Inc.*, 297 F.R.D. 42, 49 (E.D.N.Y. 2014) ("[T]he actions of a mortgage servicer . . . would only be covered under the FDCPA if the debt at issue was acquired after the customer or debtor defaulted on the loan in question."); *Dolan v. Fairbanks Capital Corp.*, 930 F.Supp.2d 396, 415–16 (E.D.N.Y. 2013) (holding that a mortgage servicer was not a "debt collector" because the plaintiff was not in default when the servicer began servicing the mortgage); *see also Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 83–84 (2d Cir. 2003) ("Debt servicing can be conducted before a debt goes into default, and the FDCPA only [applies to] . . . 'debt collectors' who, by definition, attempt to collect debts in default.").

■ Plaintiff's allegations are insufficient to establish that Seterus is a debt collector within the meaning of the FDCPA. Zirogiannis alleges that "Seterus regularly services loans that are *delinquent* or claimed by Seterus to be *delinquent* when Seterus first becomes involved with them." Am. Compl. ¶ 9 (emphasis added). According to Plaintiff, his "loan was one such loan." *Id.* at ¶ 10. However, a delinquent loan is not necessarily in default, and "courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." *Alibrandi*, 333 F.3d at 86; *see also Papetti v. Rawlings Fin. Servs., LLC*, No. 15 Civ. 2933, 2016 WL 4030863, at *3 (S.D.N.Y. July 25, 2016) ("The Second Circuit has held that a debt is not 'in default' merely because it is due."). Although "the FDCPA does not define so key a term as 'default,'" the Second Circuit has held that "default does not occur until well after a

debt becomes outstanding ...." *Alibrandi*, 333 F.3d at 86–87. The Second Circuit has further observed that parties may "contractually set the period of delinquency preceding default," and that various "federal regulations have defined default as commencing anywhere between thirty and 270 days after a debt becomes due." *Id.* at 86–87.

Zirogiannis does not allege that Seterus began servicing his loan when it was in default, but rather, that Seterus obtained his loan when it was merely delinquent. *See* Am. Compl. ¶¶ 9, 10. However, Plaintiff neither alleges that Seterus obtained his debt "well after [the] debt [became] outstanding" such that it would be considered in default, nor claims that he and his creditor "contractually set the period of delinquency preceding default." *See Alibrandi*, 333 F.3d at 86. Although Plaintiff argues in his memorandum of law in opposition to Defendant's motion that his "loan was in default when Seterus began servicing it," Pl.'s Opp'n at 2. the Amended Complaint does not contain any such allegation, and the Court may not rely "on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (internal citation omitted); *see also Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 335 (S.D.N.Y. 2000) (declining to rely upon factual allegations that were not contained in the complaint). As Plaintiff's allegations are insufficient to establish that Seterus obtained his loan when it was in default. Zirogiannis fails to allege that Seterus was a debt collector within the meaning of the FDCPA. *See Alibrandi*, 333 F.3d at 88 ("[A]n entity cannot be a debt collector unless the debt it attempts to collect is in default ...."). Therefore, Plaintiff fails to state a claim arising under the FDCPA.

Based on the foregoing, Seterus's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is granted, and Plaintiff's Amended Complaint is dismissed with prejudice.[2]

## IV. CONCLUSION

For the reasons set forth herein: (i) Plaintiff's motion to strike portions of Defendant's memorandum of law in reply is denied; (ii) Defendant's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is denied; and (iii) Defendant's motion to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

---

**2.** Plaintiff has already amended his complaint once, and does not seek leave to tile a second amended complaint in opposition to the instant motion. Therefore, dismissal of the Amended Complaint is with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [to amend the complaint] that was not made."); *Mendoza v. Cty. of Nassau*, No. 11–CV–2487, 2012 WL 4490539, at *9 (E.D.N.Y. Sept. 27, 2012) (granting the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismissing claims with prejudice where the plaintiff did not seek leave to replead).