17-0040-cv
*Paganas v. Total Maintenance Solution, LLC, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12ᵗʰ day of March, two thousand eighteen.

PRESENT:
> GUIDO CALABRESI,
> DENNY CHIN,
> SUSAN L. CARNEY,
> > *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ANTHONY PAGANAS,

> *Plaintiff-Appellant*,

> v.                                                17-0040-cv

TOTAL MAINTENANCE SOLUTION, LLC,

> *Defendant-Third-Party-*
> *Plaintiff-Counter-*
> *Defendant-Appellee*,

ARON WEBER, REGGIE TARTAGGLIONE,

> *Defendants-Third-Party-*
> *Plaintiffs-Appellees*,

ST. JOHN'S UNIVERSITY,

> *Third-Party-Defendant-*
> *Counter-Claimant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:        ROBERT S. POWERS, Law Office of Robert S. Powers, North Babylon, New York.

FOR DEFENDANT-THIRD-PARTY-PLAINTIFF-COUNTER-DEFENDANT-APPELLEE and DEFENDANTS-THIRD-PARTY-PLAINTIFFS-APPELLEES:      PERRY S. HEIDECKER, Milman Labuda Law Group, PLLC, Lake Success, New York.

Appeal from the United States District Court for the Eastern District of New York (Weinstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings.

Plaintiff-appellant Anthony Paganas appeals from a judgment entered December 6, 2016, dismissing his claims for overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.* The district court granted summary judgment in favor of Total Management Solution, LLC ("TMS"), Aron Weber, and Reggie Tartagglione. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

TMS employed Paganas as a building manager at St. John's University ("St. John's") in Queens, New York, from July 2007 to May 2014. Paganas was responsible for supervising the cleaning and the maintenance of several residential halls and sports facilities at St. John's. His duties included making sure his assigned buildings were kept clean, inspecting those buildings for deficiencies, and setting up specific rooms for meetings or events. Each morning, Paganas attended management meetings, which were normally led by Richard Rossi, Paganas's supervisor and the director of site maintenance for TMS from December 2007 to March 2011. At these meetings, Rossi distributed special work orders to Paganas, who then selected the cleaners to carry out the orders.

Paganas supervised the work of somewhere between six and fifteen cleaners. According to Rossi, Paganas was not permitted to perform cleaning duties himself under the collective bargaining agreement between Local 32BJ and TMS. Paganas, however, testified that he sometimes performed cleaning duties alongside the cleaners. As building manager, Paganas also had the authority to direct the cleaners in their work and reallocate workers in his buildings to compensate for shortages of personnel due to sickness or vacation.

TMS paid Paganas an annual salary of $80,000. By separate agreement between Paganas and the St. John's Athletic Department, Paganas was paid an additional $250 per game to oversee St. John's athletic facilities during basketball games.

In addition to his regular supervisory duties as campus building manager, Paganas handled some off-campus work and event set-ups. In his off-campus and event set-up duties, Paganas did not supervise any TMS employees.

On September 21, 2015, Paganas filed the complaint below alleging that TMS violated the overtime wage provisions of the FSLA and the NYLL. Following discovery, TMS moved for summary judgment. On October 14, 2016, the district court gave notice of a hearing to take place prior to a decision on the summary judgment motion, and asked the parties to provide information about whether Paganas qualified for any exemptions to the overtime requirements of the FLSA and the NYLL. In response, TMS asserted that Paganas qualified for both the "executive" and "administrative" exemptions under 29 U.S.C. § 213(a)(1) and N.Y. Lab. Law § 651(5)(c). The district court held the evidentiary hearing on October 18, 2016, at which Paganas and Rossi testified, and subsequently granted TMS's motion for summary judgment on December 5, 2016, finding that the executive exemption applied. Paganas timely appealed.[1]

This Court reviews *de novo* a district court's grant of summary judgment, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Alibrandi v. Fin. Outsourcing Servs., Inc.*,

---

[1] The district court also dismissed TMS's claims against St. John's. TMS has not challenged that ruling on this appeal.

333 F.3d 82, 85 (2d Cir. 2003) (citation omitted). "Summary judgment is appropriate only if it can be established that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citation and internal quotation marks omitted).

The FLSA prohibits employment for more than a specified number of hours per week without proper overtime compensation. *See* 29 U.S.C. §§ 203, 207, 213. Certain employees are exempt from the FLSA's overtime requirements, however, including those employed in a "a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "'[B]ecause the FLSA is a remedial act, its exemptions . . . are to be narrowly construed,' and the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008) (quoting *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)). The NYLL "mandates overtime pay and applies the same exemptions as the FLSA." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010). Accordingly, we discuss the FLSA only and do not engage in a separate analysis of the NYLL exemptions. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012).

## I.    Executive Exemption

Although the FLSA does not define the term "executive" for purposes of the exemption, the statute directs the Department of Labor ("DOL") to do so by

regulation. *See* 29 U.S.C. § 213(a)(1). The DOL regulations "have the force of law and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute." *Freeman v. Nat'l Broad. Co.*, 80 F.3d 78, 82 (2d Cir. 1996) (citation omitted). Under a four-factor test promulgated by the DOL, an "employee employed in a bona fide executive capacity" means any employee: (1) "[c]ompensated on a salary basis pursuant [above a prescribed level]"; (2) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) "[w]ho customarily and regularly directs the work of two or more other employees"; and (4) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(1)-(4).

We conclude that there is no genuine issue of fact as to the first and third factors of the executive exemption. As to the first factor, the parties do not dispute that Paganas's annual salary of $80,000 exceeds the minimum salary requirements under the FLSA and the NYLL. As to the third factor, Paganas oversaw, on average, six cleaners in his assigned buildings, and so there is no genuine dispute that he "customarily and regularly direct[ed] the work of two or more other employees." 29 C.F.R. § 541.100(a)(3).

We conclude, however, that there is a genuine issue of fact as to the second and fourth factors. As to the second factor, we find a genuine dispute as to whether Paganas's primary duty was management. An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The relevant regulations define "management" as including, but not limited to, "activities such as . . . directing the work of employees; . . . planning the work; . . . [and] apportioning the work among the employees." 29 C.F.R. § 541.102. Merely performing some nonexempt duties, however, does not mean that an employee's primary duty was not management. *See Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 277 (E.D.N.Y. 2013); 29 C.F.R. § 541.700(b).

Paganas was responsible for several buildings on St. John's campus, and he acknowledged that at times an average of six cleaners reported to him. Paganas's job involved overseeing the cleaners' work, instructing cleaners to carry out work orders, and monitoring his buildings to make sure they were clean. Paganas also had the authority to reassign cleaners if his buildings were short-staffed. Paganas received compensation much greater than the cleaners he supervised. Finally, his supervisor testified that he was not permitted to help with cleaning duties under TMS's agreement with the union.

Paganas testified, however, that 90 percent of his work was non-supervisory physical cleaning. The district court held that this "testimony is not

- 7 -

credited" and "found [it] to be untrue," and so determined that Paganas's primary duty was management. *Paganas v. Total Maint. Sol., LLC,* 220 F. Supp. 3d 247, 260 (E.D.N.Y. 2016). The district court erred, however, because "a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (internal citations and quotation marks omitted). Accordingly, viewing the evidence in the light most favorable to Paganas, his testimony raised a genuine dispute as to whether his primary responsibilities were management activities.

As to the fourth factor, we find that the district court also erred when it determined that there was no genuine dispute concerning whether Paganas had authority to change or to recommend the change of another employee's status. The district court found:

> Plaintiff claims that he did not have the authority to hire and fire employees. But management testified that plaintiff had the authority to recommend discipline of employees, and in fact made recommendations of discipline in individual cases. Mr. Rossi testified that plaintiff did in fact recommend discipline of employees, and made those recommendations to upper management. Plaintiff did not contradict this testimony. He has not raised a genuine dispute as to a material fact.

*Paganas*, 220 F. Supp. 3d at 262 (citations omitted). In fact, Paganas testified that: he never recommended disciplinary actions or warning against porters; he did not have the authority to hire or fire employees; and he never made any recommendations to hire, promote, or fire employees. While it is correct that Paganas twice answered that

- 8 -

he did not remember if he ever recommended discipline, he was less equivocal in other testimony. Additionally, TMS identified only one purported instance in which Paganas recommended disciplinary action. During this incident, Paganas was with the assistant director when they saw an employee was taking an illegal break, and the assistant director "disciplined [the employee] right then and there." App'x at 200. Paganas testified, "Did I recommend it? No, I didn't because the [assistant director] caught [the employee] . . . himself." *Id.* at 201.

Moreover, even if Paganas had the authority to recommend a change in an employee's status, as TMS argues, TMS has not demonstrated that Paganas's recommendations were "given particular weight." 29 C.F.R. § 541.100(a)(4); *see also* 29 C.F.R. § 541.105 (providing factors to consider in determining if the recommendations are given particular weight). "'[A]n occasional suggestion with regard to the change in status of a co-worker' is not sufficient to show that an employee's recommendations . . . were given a particular weight." *Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 535 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 541.105).

Thus, construing the evidence in the light most favorable to Paganas, there is a genuine dispute as to whether Paganas had authority to recommend a change in an employee's status. Accordingly, we find that the district court erred in granting summary judgment to TMS based on the executive exemption.

## II.    Administrative Exemption

The district court did not address the administrative exemption in its decision.  In its discussion of whether Paganas's "primary duty" could be classified as "management" under the executive exemption, the district court cited language from 29 C.F.R. § 541.200(a)(2), which addresses the administrative exemption.  The executive and administrative exemptions should be treated separately, however, as they require the employer to show prove different facts regarding an employee's work.  *See, e.g.*, *Reiseck*, 591 F.3d at 107 n.7 (refusing to address the executive exemption because only the administrative exemption was at issue).  Accordingly, on remand, we instruct the district court to consider in the first instance whether Paganas qualifies for the administrative exemption under 29 C.F.R. § 541.200.

. . .

We have considered TMS's remaining arguments and find them to be without merit.  Accordingly, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk